[No. 50825-9. En Banc. January 11, 1985.]

THE DEPARTMENT OF ECOLOGY, *Respondent,* v. EARL A. ADSIT, ET AL, *Appellants.*

*Davis, Arneil, Dorsey, Kight & Parlette,* by *Jay A. Johnson,* for appellant Evangelical Covenant Church.

*Kenneth O. Eikenberry, Attorney General, Charles B. Roe, Jr., Senior Assistant,* and *Wick Dufford* and *Charles K. Douthwaite, Assistants,* for respondent.

UTTER, J.—Circle C Ranch, and various parties representing it, appeal from a finding of the trial court that cer-

tain water rights claims made under the 1967 water rights act by the ranch were improperly filed and that no water rights accrued to the ranch by virtue of the improper filing. We reverse the trial court and hold that, under some circumstances, the doctrine of substantial compliance may be used to meet the requirements of the act.

The 1967 water rights act was designed to eliminate uncertainty as to the existence of private water claims and to assist in enforcement of the beneficial use of waters in light of the state's rapid growth. RCW 90.14.020. The act, and its 1969 amendments, are the most recent developments of a trend since the inception of statehood to encourage the beneficial use of water through comprehensive cataloging and management of the waters of the state. *See Department of Ecology v. Abbott,* 103 Wn.2d 686, 694 P.2d 1071 (1985).

The surface water management program under the 1917 water code required an application for a permit which resulted in a water right certificate. Beginning in 1945, the same type of procedure was required to obtain rights to withdraw groundwater. *See* RCW 90.44. Despite the 1917 and 1945 legislation, two problems impeded the State's management role seeking maximum beneficial use consistent with environmental and aesthetic principles. First, a great deal of water earlier allocated had not actually been used. Second, the rights which came into being prior to enactment of the surface or groundwater codes were, in the main, unknown. The 1967 water rights act addressed these problems.

The primary thrust of the 1967 act is the requirement that all claims to water rights not already certified by the State be recorded prior to June 30, 1974. RCW 90.14.041. Water rights not claimed are deemed relinquished. RCW 90.14.071. Only riparian rights which do not diminish the quantity of water remaining in the source, such as boating, swimming and other recreational or aesthetic uses, need not be registered. *See* RCW 90.14.020(5).

## I

Sunitsch Creek originates on and flows across the land owned by the Circle C Ranch. The same is true of two unnamed springs on ranch property. The ranch claims that it, and its predecessors in interest, have used water from the creek continuously since 1893.[1]

In May 1974, the ranch filed three applications for permits to appropriate water. One application was for .005 cubic feet per second of water (c.f.s.) from an unnamed spring. This application was granted in a 1979 stream adjudication and is not at issue. The other two applications asked for appropriations of 1.25 c.f.s. from Sunitsch Creek and .079 c.f.s. from an unnamed spring. These applications were denied in the 1979 stream adjudication.

Circle C Ranch filed its applications after seeing a notice in the newspaper that water rights claims had to be registered with the State. The notice published in conformance with RCW 90.14.091(2), clearly indicated the responsible administering agency as the Department of Water Resources (now the Department of Ecology). A representative of the ranch contacted a district engineer for the Health Service Division with the Department of Social and Health Services. He had worked previously with the engineer on water supply problems at the ranch. Although the Department of Ecology (DOE) has sole responsibility for administering the water rights act, the engineer sent the ranch what he represented to be the proper forms for registering the ranch's existing water claims. They were not the correct forms—they were applications for permits to appropriate.

An application for a permit to appropriate requires virtually the same information as a statement of claim. In fact, the applications Circle C Ranch submitted contained all of the information required in a statement of claim. The

---

[1]This factual issue may be reached upon remand and should be determined according to the principles of *Department of Ecology v. Abbott*, 103 Wn.2d 686, 694 P.2d 1071 (1985). Our decision in this case does not address the ranch's claim of continuous use.

applications indicated that Circle C Ranch would use the water for stock watering, domestic supply, irrigation and fire protection. The applications also stated the legal doctrine on which the claim was based—that the source was located on Circle C land and the ranch claimed water rights appurtenant to the property pursuant to an 1893 claim of Mabel Sunitsch, a predecessor in interest of Circle C Ranch.

Circle C completed the forms unaware of its mistake and submitted them to DOE on May 23, 1974. DOE never informed the ranch that it filed the wrong forms. Not until a 1979 stream adjudication did a DOE referee determine that two of the applications based on appropriative claims were on the wrong forms. The State claimed, as a result, that rights to the water which the ranch had enjoyed previously were forfeited. Subsequently, the Legislature extended the time period for filing claims, but Circle C Ranch was not notified of the extension and failed to file a proper claim during this period as well.

The permits were later approved in part after the adjudication.[2] The Department of Ecology assigned the permits a 1974 priority date. The result is that, in the event of a shortage, the ranch's water will be cut off much sooner than if it had retained the 1893 priority.

## II

As a riparian owner, Circle C Ranch has no claim to riparian water rights not exercised by 1932. *Department of Ecology v. Abbott, supra* at 695. However, Circle C Ranch argues that this court should apply either the doctrine of estoppel or the doctrine of substantial compliance to reinstate its water rights based on continuous riparian use by the ranch and its predecessors in interest, traceable to the 1893 Sunitsch claim.

---

[2]For one application, however, the Department allocated water to irrigate only 25 acres, rather than an amount sufficient to irrigate 80 acres as requested.

ESTOPPEL

█ The party alleging estoppel must prove all elements. *Bignold v. King Cy.*, 65 Wn.2d 817, 399 P.2d 611 (1965). Appellants alleged that the engineer for DSHS made statements which led them to reasonably believe he had authority to supply water rights claim forms. Appellants did not prove these allegations. The ranch failed to call the engineer as a witness and the cover letter he sent to the ranch with the forms also fails to support the alleged assertion of authority. Furthermore, appellants admit they received notice from a newspaper. The newspaper notices published specifically referred readers to the Department of Ecology for information. Had the ranch contacted DOE it likely would have properly registered its claims.

█ Appellants base a second argument for estoppel on the actions and nonactions of the referee in the proceeding. In March 1979, the referee referred to the period for filing claims under the registration act as ending June 30, 1974. Over 2 months later, RCW 90.14.043, providing a 4-month extension for filing certain claims beginning September 1, 1979 was signed into law. Circle C Ranch contends DOE or the referee should have notified the ranch of the extension. However, DOE had no duty to publicize passage of RCW 90.14.043. Further, as an officer of the superior court, it would have been improper for the referee to advise one party in the proceeding how to improve its legal position to the detriment of others. *Cf.* Code of Judicial Conduct, Canon 3(A)(4). The State's actions did not estop it from rejecting the ranch's claims.

SUBSTANTIAL COMPLIANCE

RCW 90.14.041 provides in part:

All persons using or claiming the right to withdraw or divert and make beneficial use of public surface or ground waters of the state, except as hereinafter provided in this section, shall file with the department of water resources not later than June 30, 1974, a statement of claim for each water right asserted on a form provided by the department.

Water rights which are not claimed are declared to be relinquished. RCW 90.14.071 states:

> Any person claiming the right to divert or withdraw waters of the state as set forth in RCW 90.14.041, who fails to file a statement of claim . . . shall be conclusively deemed to have waived and relinquished any right, title, or interest in said right.

The statute required water rights claimants to file a statement of claim on a form provided by the Department of Water Resources. The ranch's attempt to comply with the law failed only because it used the wrong form. Although Circle C Ranch used the application form for a *new* water right, the form used was submitted to the proper agency and contained all the information required by the claims form, including the statement that the application was based on the 1893 Sunitsch claim.

 The substantial compliance doctrine exists specifically for those situations when "the *literal expression* of legislation may be *inconsistent with the general objectives or policy behind it* . . ." *Murphy v. Campbell Inv. Co.,* 79 Wn.2d 417, 420, 486 P.2d 1080 (1971), quoting 3 J. Sutherland, *Statutory Construction* § 6006 (3d ed. 1943). In *Murphy,* a building contractor was allowed to sue on two contracts, even though he only substantially complied with RCW 18.27 which requires contractors to secure a bond, liability insurance, and a registration certificate. The bond and insurance were in effect on the date the contracts were signed. The registration certificate, refused on technical grounds, was issued less than a month later.

Here, although the form was incorrect, the substantive information the applicant supplied met the legislative intent by providing adequate records for administration of the state's waters and notifying the State that the water was being put to beneficial use.

## III

██ RCW 90.14.071 provides that "[a]ny person claiming the right to divert or withdraw waters of the state . . . who

fails to file a statement of claim . . . shall be conclusively deemed to have waived and relinquished any right, title, or interest in said right." Circle C Ranch argues that this provision effects a taking without notice or due process. Although the result we reach in this case may render a determination on this question moot, we may nonetheless decide an issue where it involves "matters of continuing and substantial public interest". *Sorenson v. Bellingham,* 80 Wn.2d 547, 558, 496 P.2d 512 (1972). The criteria to be considered in determining whether sufficient public interest is involved are: (1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the likelihood that the question will recur. *Sorenson,* at 558. These criteria favor a determination in this case whether the 1967 water rights act, as amended, violates the fifth or fourteenth amendments to the United States Constitution or article 1, section 16 of our state constitution.

## NOTICE

It cannot be denied that property owners have a vested interest in their water rights to the extent that the water is beneficially used on the land. *Department of Ecology v. Acquavella,* 100 Wn.2d 651, 655, 674 P.2d 160 (1983). Since *Nielson v. Sponer,* 46 Wash. 14, 89 P. 155 (1907), we have recognized that water rights must receive due process protection.

◼ The landmark case on due process notice is *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950). It stated that, prior to an action which will affect an interest in life, liberty or property protected by the due process clause, notice must be provided which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314. In *Acquavella,* an adjudication affecting over 40,000 persons, we did not require DOE to provide notice by mail or personal service.

As the Supreme Court stated in *Mullane,* "[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified." 339 U.S. at 313–14. To require the DOE to compile the names and addresses of all ultimate water users in the basin would be an impractical obstacle.

*Acquavella,* 100 Wn.2d at 657. Here, where the water rights act applied to all persons in the state claiming a right to water, as a matter of law we hold the newspaper notice adequate.

## TAKING

If the registration and forfeiture provisions operate to effect a taking or damaging of appellants' property for public use, the State must pay appellants compensation. The distinction between a "taking" requiring compensation and a valid exercise of the police power of the State for which there is no right to compensation has been extensively discussed. *See, e.g.,* F. Bosselman, D. Callies & J. Banta, *The Taking Issue* (1973); Sax, *Takings and the Police Power,* 74 Yale L.J. 36, 63 (1964); Sax, *Takings, Private Property and Public Rights,* 81 Yale L.J. 149 (1971); Stoebuck, *Police Power, Takings, and Due Process,* 37 Wash. & Lee L. Rev. 1057, 1091–93 (1980).

We have also previously determined that no unconstitutional taking occurs when the law requires that unused riparian rights revert to the State. *Department of Ecology v. Abbott, supra* at 697. As we note in *Abbott,* a state even has the power to modify or reject the doctrine of riparian rights. *See, e.g., Baumann v. Smrha,* 145 F. Supp. 617, 624 (D. Kan.), *aff'd,* 352 U.S. 863 (1956).

■ The statute at issue does not aim to regulate or restrict property rights. It merely requires their registration. No affirmative action by the State exists under RCW 90.14.071 which could result in diminution or extinction of water rights validly held. Neither does the statute impose an onerous burden on the property owner. Where no affirmative action by the government is involved, no taking of private property can occur. *Rains v. Department of Fisher-*

*ies,* 89 Wn.2d 740, 745, 575 P.2d 1057 (1978).

The United States Supreme Court recently upheld another state's desire to maximize resource utilization by requiring registration of claims. The Court in *Texaco, Inc. v. Short,* 454 U.S. 516, 530, 70 L. Ed. 2d 738, 102 S. Ct. 781 (1982) emphasized that it "has never required the State to compensate the [property] owner for the consequences of his own neglect." It then upheld an Indiana statute which declared that a severed mineral interest, when unused for 20 years, automatically lapsed and reverted to the current surface owner unless the mineral owner filed a statement of claim with the county recorder's office. Although the mineral estate was a "vested property interest," the Court stated that

> just as a State may create a property interest that is entitled to constitutional protection, the State has the power to condition the permanent retention of that property right on the performance of reasonable conditions that indicate a present intention to retain the interest.

454 U.S. at 526. Because the water right owner's own neglect causes the right to be lost, we do not require compensation for the consequences of neglect. The police power of the State, exercised to catalog water rights and further their beneficial use, does not require compensation for the waiver and relinquishment of unclaimed water rights.

## IV

The doctrine of substantial compliance may be used to meet the requirements of the water rights act under the facts presented here. This case is remanded to the trial court for a final determination of the ranch's rights in light of this holding and our holdings in *Department of Ecology v. Abbott, supra.*

WILLIAMS, C.J., BRACHTENBACH, DOLLIVER, DORE, DIMMICK, PEARSON, and ANDERSEN, JJ., and CUNNINGHAM, J. Pro Tem., concur.