106 Wn.2d 347 (1986)
722 P.2d 90
JOHN M. FAKKEMA, ET AL, Appellants,
v.
ISLAND COUNTY PUBLIC TRANSPORTATION BENEFIT AREA, Defendant,
SARANELL DE CHAMBEAU, ET AL, Respondents.
No. 51768-1.
The Supreme Court of Washington, En Banc.
July 10, 1986.
*348 Ted D. Zylstra, Alan R. Hancock, and Zylstra, Beeksma, Waller & Skinner, for appellants.
Allen J. Hendricks and Hendricks, Sevenich, Segelbaum & Peale, for respondents.
ANDERSEN, J.

FACTS OF CASE
This case involves a public transportation benefit area encompassing portions of Island County. At issue is whether the boundaries of the benefit area were revised in accordance with statutory requirements, and whether persons who were not residents of the revised benefit area should have had the right to vote on a sales tax to be levied within the benefit area.
Island County is comprised of Whidbey and Camano Islands. There are three cities in the county, all of which are on Whidbey Island. In August 1980, the Board of Island County Commissioners convened a public transportation improvement conference, for the purpose of establishing a public transportation benefit area. As originally proposed, the benefit area included all of Island County. It is undisputed that this original benefit area was created in accordance with statutory requirements.[1] A benefit area authority (Authority) was then set up to act as the governing board *349 for the benefit area.[2] Finally, to finance the proposed new public transportation system, Island County voters were asked to approve a .3 percent sales and use tax.[3] In November of 1980, the voters rejected the proposed tax. The same tax measure was placed before the voters approximately 2 years later, in September 1982, and was again defeated.
Then in October 1982, the Authority held a meeting to discuss the failure of the second election. The Authority concluded that it would be very difficult to implement a county-wide transportation system. It then decided to revise the benefit area boundaries to include only those Island County areas in which the voters had indicated their support for public transportation. The proposed new benefit area encompassed most of Whidbey Island, including all three of its cities, but excluded the northernmost precincts of Whidbey Island and all of Camano Island.
In January 1983, the Authority notified the cities of the proposed changes in the benefit area and asked whether they wished to participate in the new plan. The cities responded affirmatively. The Authority then set a date for a conference and public hearing on the plan and published notice of the hearing date.
In May 1983, the public hearing was held; no one present indicated dissatisfaction with the new plan. The conference thereupon passed a unanimous resolution approving the proposed changes to the benefit area.
In November 1983, voters living within the revised benefit area were again asked to approve a .3 percent sales and use tax to finance the public transportation system. This time the measure passed, and the transportation system was implemented.
Plaintiffs John M. Fakkema and Marilyn Kincaid then brought this action alleging that the revised benefit area *350 was invalidly created. In addition, plaintiff Fakkema alleged that the Authority abridged his constitutional rights of equal protection and equal suffrage by denying him the opportunity to vote on the November 1983 sales tax measure. The trial court upheld the validity of the benefit area and held that the plaintiffs' constitutional rights had not been violated. We granted direct review.[4]
Two principal issues are presented.

ISSUES
ISSUE ONE. Did the Authority substantially comply with statutory procedures in revising the boundaries of the Island County public transportation benefit area?
ISSUE TWO. Did the Authority abridge plaintiff Fakkema's constitutional rights of equal protection and equal suffrage by denying him the opportunity to vote on the November 1983 sales tax measure?

DECISION

ISSUE ONE.
CONCLUSION. In revising the boundaries of the public transportation benefit area, the Authority complied with most of the required statutory procedures and fulfilled the basic purposes and objectives of the applicable statutes. We hold that under the facts of the case this constitutes substantial compliance and that substantial compliance is sufficient.
The statutory framework for establishing and financing a public transportation benefit area is found in RCW 36.57A.020-.030, 36.57A.050 and 82.14.045. The plan contemplated by these statutes sets out the following 11 basic steps:
1. The county commissioners convene a public transportation improvement conference for the purpose of establishing a public transportation benefit area.
2. The county commissioners delineate the initial area to be included within the benefit area and send a description of it to each city in the benefit area.
*351 3. Each of the cities is given the opportunity to opt in or out of the proposed benefit area.
4. The county commissioners then review the benefit area they delineated to ensure that it reflects the cities' wishes.
5. The conference fixes a public hearing date.
6. Notices of the hearing date are published.
7. Following the public hearing, the conference sets the final boundaries of the benefit area.
8. The county commissioners then have 30 days to veto establishment of the benefit area, and each of the cities has 60 days to withdraw from participation in the benefit area.
9. The county commissioners and the cities within the benefit area then select the members who are to serve on the board of the public transportation benefit authority. The Authority thus formed is henceforth the governing body of the benefit area.
10. The Authority then determines the local sales tax required to finance its proposed operations, and submits it to the voters for approval.
11. The majority of the voters in the benefit area who vote at the election decide whether or not the tax will be approved.
As can be seen from the foregoing statutory plan, steps 1 through 4 are preliminary steps to be performed by the county commissioners in the initial formation of a benefit area. These provisions ensure that the affected cities receive notice of the proposal and have an opportunity to opt out of the benefit area if they so desire. Steps 5 through 8 complete the initial process of establishing a benefit area. Once this is done, step 9 provides for the establishment of the Authority to serve as the benefit area's governing body. As previously noted, it is undisputed that the original benefit area was created in accordance with all of these requirements.
In revising the boundaries of the benefit area, the Authority again followed the statutory procedures, except that it did not ask the county commissioners to again perform *352 preliminary steps 1 through 4. The Authority did, however, provide the affected cities with notice of the proposed revisions to the benefit area, thus achieving the purposes of statutory steps 1 through 4. Since the remainder of the statutory scheme was followed, we conclude that the Authority substantially complied with the applicable statutes in creating the revised benefit area.
[1] We also conclude that such "substantial compliance" is sufficient in this case. As recently declared in Department of Ecology v. Adsit, 103 Wn.2d 698, 704, 694 P.2d 1065 (1985), quoting in part from Murphy v. Campbell Inv. Co., 79 Wn.2d 417, 420, 486 P.2d 1080 (1971):
The substantial compliance doctrine exists specifically for those situations when "the literal expression of legislation may be inconsistent with the general objectives or policy behind it ..."
Here, all of the objectives in the statutory plan have been achieved. Under the facts of this case, we perceive no valid purpose to be served by requiring the county commissioners to retrace steps 1 through 4 in the statutory plan when the boundaries of the public transportation benefit area are revised.

ISSUE TWO.
CONCLUSION. Nonresidents of a public transportation benefit area have no constitutional right to vote on a sales tax to be levied solely within the benefit area. Since plaintiff Fakkema is not a resident of the revised Island County benefit area, the Authority did not abridge his right to equal protection and equal suffrage by denying him the opportunity to vote on the November 1983 sales tax measure.
As discussed above, the original benefit area encompassed all of Island County. However, after voters in northern Whidbey Island precincts and Camano Island rejected two sales tax measures to finance public transportation, the Authority redrew the boundaries of the benefit area to exclude those areas. In November 1983, the Authority submitted the sales tax measure to voters in the *353 revised benefit area; residents of the excluded precincts were thus unable to vote on the measure.
Plaintiff Fakkema lives in one of the excluded areas. It is his claim that the Authority deprived him of equal protection when he was denied the opportunity to vote on the sales tax measure. He makes this claim despite the fact that the sales tax was to be levied only within the revised benefit area, and only to finance public transportation within that area. He argues that since he does most of his shopping in Oak Harbor, a city located in the revised benefit area, he is indirectly subject to the sales tax levied there. It does not follow from this, however, that the Authority deprived him of his equal protection rights.
[2] The Authority acted pursuant to state statute, RCW 82.14.045, which permits it to submit sales tax proposals to voters residing in the affected benefit area. The United States Supreme Court has repeatedly declared that bona fide residential requirements restricting the right to vote do not violate the equal protection clause.[5] As the Supreme Court explained in Holt Civic Club v. Tuscaloosa, 439 U.S. 60, 68-69, 58 L.Ed.2d 292, 99 S.Ct. 383 (1978),
our cases have uniformly recognized that a government unit may legitimately restrict the right to participate in its political processes to those who reside within its borders.
This is true even if a sales tax levied in a neighboring municipality[6] may in some cases impose an indirect burden on nonresidents. The Court's reasoning in Holt Civic Club, at 69, is persuasive:
Appellants' argument that extraterritorial extension of municipal powers requires concomitant extraterritorial extension of the franchise proves too much. The imaginary *354 line defining a city's corporate limits cannot corral the influence of municipal actions. A city's decisions inescapably affect individuals living immediately outside its borders.... A rate change in the city's sales or ad valorem tax could well have a significant impact on retailers and property values in areas bordering the city.... Yet no one would suggest that nonresidents likely to be affected by this sort of municipal action have a constitutional right to participate in the political processes bringing it about.
We therefore reject Mr. Fakkema's equal protection claim.
He also claims that the Authority's actions abridged his right of equal suffrage under the Washington constitution.[7] He cites only one case, Foster v. Sunnyside Vly. Irrig. Dist., 102 Wn.2d 395, 687 P.2d 841 (1984), in support of this claim. Foster, however, is distinguishable. In Foster, we held that residents of an irrigation district whose property was assessed to pay for irrigation services had the right to vote in district elections. As we also made clear in Foster, however, that case involved the rights of residential landowners who were "directly and significantly affected by the district's operation." (Italics ours.)[8] Here, on the other hand, we are dealing with nonresidents who are at most indirectly affected by a sales tax levied in a neighboring public transportation benefit area. Our research has disclosed no legal authority in point which would support an equal suffrage claim under these facts.
Plaintiffs also argue that the Authority engaged in "gerrymandering" when it redrew the boundaries of the benefit area and that its actions were arbitrary and unreasonable. We are not persuaded by this argument. Here, the Authority did no more than tailor the boundaries of the benefit area to provide public transportation where a majority of the voters wanted it and were willing to pay for it. We know of no policy reason, and the statutes do not suggest *355 any, why the residents of Camano Island and Whidbey Island's northerly precincts should be forced to be in a regional transportation system when, by their ballots, they twice made it clear that they did not want to be included.
Plaintiffs finally allege that the Authority violated the Open Public Meetings Act of 1971[9] in revising the boundaries of the benefit area. Nothing in our review of the record supports this claim; furthermore, the issue was not raised in the trial court.[10]
In sum, we hold that the revised public transportation benefit area was validly created and the plaintiffs' constitutional rights to equal protection and equal suffrage were not violated.
Affirmed.
DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, CALLOW, GOODLOE, and DURHAM, JJ., concur.
NOTES
[1] See RCW 36.57A.020, .030.
[2] See RCW 36.57A.050.
[3] See RCW 82.14.045.
[4] RAP 4.2(a)(4).
[5] Holt Civic Club v. Tuscaloosa, 439 U.S. 60, 68-69, 58 L.Ed.2d 292, 99 S.Ct. 383 (1978); Dunn v. Blumstein, 405 U.S. 330, 343-44, 31 L.Ed.2d 274, 92 S.Ct. 995 (1972); Kramer v. Union Free Sch. Dist. 15, 395 U.S. 621, 625, 23 L.Ed.2d 583, 89 S.Ct. 1886 (1969).
[6] A public transportation benefit area is a municipal corporation. RCW 36.57A.010(1).
[7] Const. art. 1, § 19.
[8] Foster v. Sunnyside Vly. Irrig. Dist., 102 Wn.2d 395, 410, 687 P.2d 841 (1984).
[9] RCW 42.30.
[10] Ruddach v. Don Johnston Ford, Inc., 97 Wn.2d 277, 281, 644 P.2d 671 (1982).