No. **91-140**

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN THE MATTER OF THE ADJUDICATION OF THE EXISTING
RIGHTS TO THE USE OF ALL THE WATER, BOTH SURFACE
AND UNDERGROUND, WITHIN THE YELLOWSTONE RIVER ABOVE
AND INCLUDING BRIDGER CREEK IN GALLATIN, PARK, SWEET
GRASS, AND STILLWATER COUNTIES, MONTANA.



APPEAL FROM:     The Montana State Water Courts,
                 The Honorable W. W. **Lessley, Judge Presiding.**

COUNSEL OF RECORD:

        For Appellant:

        R. Mark Josephson (argued); Josephson & Fredricks,
        Big Timber, Montana

        For Respondent:

        Hon. Marc Racicot, Attorney General; George
        Schunk, Assistant, (argued) Helena, Montana
        Donald MacIntyre, Dept. of Natural Resources,
        Helena, Montana
        Robert N. Lane, Dept. Fish, Wildlife & Parks,
        Helena, Montana
        Blake Watson (argued), Barry M. Hartman, Robert L.
        Klarquist, John R. Hill, Jr., Patrick Barry, U. S.
        Department of Justice, Washington, D.C.
        Doris S. Poppler, **U.S.** Attorney, Billings, Montana
        Jody Miller, Office of General Counsel, Dept. of
        Agriculture, Missoula, Montana
        John C. Chaffin, Office of Field Solicitor, Dept.
        of the Interior, Billings, Montana
        Daniel F. Decker, Confederated Salish & Kootenai
        Tribes, Pablo, Montana
        David Pengelly; Knight, Maclay & Maser, Missoula,
        Montana
        Ann E. Wilcox, Billings, Montana
        John W. Duncan, Joplin, Montana

        For Amicus Curiae:

        Bruce R. Toole (argued) and Janice L. Rehberg
        (argued), Crowley Law Firm, Billings, Montana
        (Tiegen)
        Michael E. Zimmerman (argued) and Susan J.
        Callaghan, Montana Power Co., Butte, Montana
        W. *G.* Gilbert, Jr. and W.G. Gilbert, 111, Dillon,
        Montana (MacKenzie)
        John North and Lon J. Maxwell, Dept. of State
        Lands, Helena, Montana

Submitted: January 23, 1992

Decided: May 7, 1992

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from an order of the Water Court forfeiting appellants' water rights for failing to timely file a claim pursuant to § 85-2-226, MCA. The Water Court upheld the constitutionality of § 85-2-226, MCA, finding that its application works as a forfeiture and not an abandonment. The appellants, whose water rights were dismissed, request this Court to reverse the Water Court and declare § 85-2-226, MCA, unconstitutional. We affirm.

We will review the following issues.

I. Does Article IX, Section 3, of the Montana Constitution protect pre-1973 water rights from legislative forfeiture?

11. Does § 85-2-226, MCA, violate the due process clauses of Article 11, Section 17, of the Montana Constitution and the Fourteenth Amendment of the United States Constitution?

III. Does forfeiture of water rights under § 85-2-226, MCA, constitute a taking without just compensation in violation of Article II, Section 29, of the Montana Constitution and the Fifth and Fourteenth Amendments of the United States Constitution?

IV. Does § 85-2-226, MCA, violate the equal protection clauses of Article 11, Section 4, of the Montana Constitution and the Fourteenth Amendment of the United States Constitution?

v. Does § 85-2-226, MCA, constitute an impairment of contracts in violation of Article 11, Section 31, of the Montana Constitution and Article I, Section 10, of the United States Constitution?

r

This action was initiated sua sponte through order of the Chief Water Judge, the late Judge W.W. Lessley, on August 3, 1988. The law governing Montana's water rights adjudication required pre-1973 water claims to be filed with the Department of Natural Resources by 5:00 p.m. on April 30, 1982, or be conclusively presumed abandoned. Sections 85-2-221 and 226, MCA. The Water Court consolidated 109 late claims filed in Yellowstone River Basin above and including Bridger Creek (Basin 43B). Opportunity was provided each of the late claimants in Basin 43B, as well as other similarly situated late claimants from around the state to participate in the proceedings.

As could be expected, numerous interested parties responded. Briefs were filed, oral arguments presented and proposed findings of fact and conclusions of law accepted by the Water Court. On July 17, 1989, the Water Court issued an order that as paraphrased below included:

(1) section 85-2-226, MCA, acts as a forfeiture statute that results in the involuntary loss of a water right caused by the failure of an owner to timely file his claim as required by statute.

(2) By order of the Montana Supreme Court, December 7, 1981, to be timely received, a water claim must be actually received and filed with the Department of Natural Resources by 5:00 P.M. on April 30, 1982, claims received thereafter are forfeited and declared null and void.

(3) Section 85-2-226, MCA, survives constitutional challenge on due process, equal protection, and impairment-of-contracts grounds.

(4) Section 85-2-226, MCA, does not conflict with Article IX, Section 3(1) of the Montana Constitution.

(5) Provisions were made for evidentiary hearings

2

providing the Water Court opportunity to make individual determinations of whether specific claims were timely filed.

On December 17, 1990, final judgment was entered pursuant to Rule 54(b), M.R.Civ.P., finding the late filed claims of Basin 43B to be conclusively abandoned under § 85-2-226, MCA. From this judgment an appeal was filed by Kenneth D. and Donna L. Laubach, Robert B. and Connie Malcolm, the Boulder River Ranch, Inc., Carmine B. and Francine S. Rizzotto and the Jumping Rainbow Ranch, all late claimants in Basin 43B (hereinafter collectively referred to as appellants).

Each of the appellants exercised their right to an evidentiary hearing and alleged different factual circumstances for having filed late. Evidence was presented by each appellant of a historical and continued use of water for varied beneficial purposes. All appellants contend they in no way have 'abandoned' their rights. The Water Court determined that each had filed late and under § 85-2-226, MCA, had forfeited their claim.

**I.**

Does Article IX, Section 3, of the Montana Constitution protect pre-1973 water rights from legislative forfeiture?

Article IX, Section 3, of the Montana Constitution provides in its entirety:

> Water rights.(1) All existing rights to the use of any waters for any useful or beneficial purpose are hereby recognized and confirmed.
> (2) The use of all water that is now or may hereafter be appropriated for sale, rent, distribution, or other beneficial use, the right of way over the lands of others for all ditches, drains, flumes, canals, and aqueducts necessarily used in connection therewith, and

3

the sites for reservoirs necessary for collecting and storing water shall be held to be a public use.

(3) All surface, underground, flood, and atmospheric waters within the boundaries of the state are the property of the state for the use of its people and are subject to appropriation for beneficial uses as provided by law.

**(4)** The legislature shall provide for the administration, control, and regulation of water rights and shall establish a system of centralized records, in addition to the present system of local records.

The appellants contend that subsection (1) provides a guarantee of existing water rights and any statutory scheme that obviates that guarantee is against public policy. The Montana Constitution is alleged to extend to the legislature the power to affirm and preserve existing water rights but not the power to forfeit or extinguish them.

We have held that "[to the extent of beneficial use] the 1972 constitutional recognition of water rights is effective and will be sustained". McDonald v. State (1986), 220 Mont. 519, 722 P.2d 598. However, we have also held that Article IX, Section 3(1):

prevents the State from affecting rights vested at the time the Constitution was adopted other than through the exercise of Constitutionally provided powers such as eminent domain, Mont. Const. Art. 11, Sec. 17, or the general police power, and without affording due process of law, Mont. Const. Art. I, sec. 17.

Department of State Lands v. Pettibone (1985), 216 Mont. 361, 702 P.2d 948. Pettibone recognizes that the State's ability to affect existing and recognized water rights survives the adoption of Article IX, Section 3(1), of the Montana Constitution.

The United States Supreme Court held:

Even with respect to vested property rights, a legislature generally has the power . . . to condition their continued retention on performance of certain

4

affirmative duties. As long as the **. . .** duty imposed is a reasonable restriction designed to further legitimate legislative objectives, the legislature acts within its powers in imposing such... duties. (citations omitted) United States v. Locke (1985), 471 U.S. 84.

We conclude that Article IX, Section 3(1), of the Montana Constitution does not establish that pre-1973 water rights are immune from sovereign powers. These rights, like other property rights, are protected against unreasonable state action; however, they have not been granted indefeasible status. Furthermore, we conclude that consistent with Article IX, Section **3**(1)**,** of the Montana Constitution, the State Legislature may enact constitutionally sound regulations including the requirement for property owners to take affirmative actions to maintain their water rights.

## II.

Does § 85-2-226, MCA, violate the due process clauses of Article 11, Section 17, of the Montana Constitution and the Fourteenth Amendment of the United States Constitution?

Section 85-2-226, MCA, states in full:

Abandonment by failure to file claim. The failure to file a claim of an existing right as required by 85-2-221 establishes a conclusive presumption of abandonment of that right.

The appellants contend the conclusive presumption of § 85-2-226, MCA, violates due process because it fails to provide an opportunity to rebut the presumption of abandonment. The appellants rely on the United States Supreme Court ruling that the Due Process Clause forbids denying an individual a right on the basis of an irrebuttable presumption when that presumption is not

necessarily or universally true in fact. Vlandis v. Kline (1973), 412 U.S. 441.

The appellants note that abandonment, as historically defined by this Court, has always at least required a showing of non-use. Tucker v. Jones (1888), *8* Mont. 225, 19 P. 571; 79 Ranch, Inc. v. Pitsch (1983), 204 Mont. 426, 666 P.2d 215. Appellants argue that their failure to file is related to various mistakes and has absolutely nothing to do with non-use. Because the appellants have maintained continuous and beneficial use of their water rights, they allege that the presumption of abandonment for failure to timely file is neither necessarily nor universally true in fact and that therefore, § 85-2-226, MCA, is constitutionally infirm.

The Montana Legislature has defined, for the limited purpose of establishing existing water rights, that failure to file a claim will be construed as abandonment of that claim. Section 85-2-226, MCA. While this definition of abandonment does not appear to parallel this Court's previous definition of abandonment, it is within the province of the legislature to enact such a definition. Legislatures can enact substantive rules of law that treat property as forfeited under conditions that the common law would not consider sufficient to indicate abandonment. United States v. Locke (1985), 471 U.S. 84, 106, citing Hawkins v. Barney's Lessee, (1831) 5 Pet. 457, 467.

All water claimants were provided more than ample notice and given expanded opportunity to file a claim. Section 85-2-226, MCA, makes clear that failure to file in a timely fashion establishes

that the water right claimant has abandoned their right. We cannot say that it is impermissible for the legislature to construe a failure to file as the intention of the water right holder to discontinue use of that right.

In Vlandis, the Connecticut Legislature created a conclusive presumption that a student was an out of state resident for tuition purposes if his address at the time of admission or in the year preceding admission was out of state. The Supreme Court determined this to be impermissible because students were not provided opportunity to rebut the presumption and because pre-admission addresses did not necessarily prove nor disprove residency. Vlandis makes it abundantly clear that:

> a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment. (Citations omitted.) Vlandis v. Kline, 412 U.S. at 446.

However, § 85-2-226, MCA, does not operate, as did the Connecticut statute, to deny opportunity to rebut. Water right claimants in Montana were all properly notified and had the opportunity to rebut the presumption of abandonment by filing a claim. In contrast, the Connecticut students had no recourse whatsoever and could do nothing to prevent the triggering of the presumption. The Court, in Vlandis, noted that a student's address at the time of admission was an arbitrary method of determining residency.

Other examples of when the Supreme Court has struck down laws creating impermissible conclusive presumptions include a law providing that teachers are unable to perform their duties when

7

they are more than 4 months pregnant, Cleveland Board of Education v. LaFluer (1974) 414 U.S. 632; and that unwed fathers are unfit to be parents, Stanley v. Illinois (1972) 405 U.S. 645. These presumptions, as in Vlandis, created factual conclusions as a matter of law which the court ruled could only be accurately made through individualized determinations. As such, the conclusions were arbitrary and not necessarily true. In the instant case, the legislative definition of abandonment, as used in § 85-2-226, MCA, does not require any individualized determinations. The definition applies the same to all people who filed after the deadline. The only individualized determination necessary is to establish whether the deadline was met. Hearings are already provided by the Water Court for this purpose.

Finally, the appellants argue that:

> The State's interest in administrative ease and certainty cannot, in and of itself, save the conclusive presumption from invalidity under the Due Process Clause where there are other reasonable and practicable means of establishing the pertinent facts on which the state's objective is premised. Vlandis v. Kline, 412 U.S. at 451.

Unlike the cases cited above where hearings are a more reasonable and necessary alternative; no more reasonable alternative is provided or necessary in the instant case. The appellants suggest that the presumption should be rebuttable and merely shift the burden to the late claimants to prove they did not in fact abandon their rights. The legislature chose not to create a rebuttable presumption, a constitutionally permissible decision.

We conclude the conclusive presumption created by § 85-2-226,

MCA, is valid under the Due Process Clause.

The Water Court, in reliance on the United States Supreme Court, ruled that despite the use of the word abandonment, § 85-2-226, MCA, is a forfeiture statute. United States v. Locke (1985), 471 U.S. 84; Texaco, Inc. v. Short (1982), 454 U.S. 516. Locke involved the constitutionality of section 314(c) of the Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. 1744(c), which required holders of mining claims to file, prior to December 31 of every year, a notice of intention to continue holding the mining claim. Locke filed notice one day past the deadline and his claim (worth several million dollars) was deemed abandoned. Locke challenged the constitutionality of the law on several grounds including that the statute created an irrebuttable presumption which violated due process.

Section 314(c) of FLPMA provides:

> The failure to file such instruments as required... shall be deemed conclusively to constitute an abandonment of the mining claim. . . .

Locke argued that the failure to timely file a claim should not extinguish the claim, but merely shift the burden to the claimant to prove the claims were not abandoned. The Supreme Court held:

> Although §314(c) is couched in terms of a conclusive presumption of "abandonment", there can be little doubt that Congress intended §314 (c) to cause a forfeiture of all claims for which the filing requirements... had not been met.
>
> * * * * * *
>
> 5314(c) presumes nothing about a claimant's actual intent: the statute simply and conclusively deems such claims to be forfeited. ... there is nothing to suggest that ... Congress was in any way concerned with whether

9

a particular claimant's tardy filing or failure to file indicated an actual intent to abandon the claim. <u>Locke</u>, 471 U.S. at 98, 103.

Finally, in <u>Locke</u>, the Court held that forfeiture statutes are "not subject to the individualized hearing requirement of such irrebuttable presumption cases as <u>Vlandis v. Kline</u>. . ." <u>Locke</u>, 471 U.S. at 103.

The appellants argue that <u>Locke</u> is not controlling and attempt to distinguish <u>Locke</u> on several grounds. They argue that §314(c) FLPMA, was enacted for a different purpose, does not effect a constitutionally recognized and confirmed right such as Montana's water rights, and that it fulfills the policies being promoted by FLPMA while the policies of the Water Use Act of Montana are not fulfilled by § 85-2-226, MCA. We disagree. The interests of the federal government recognized in <u>Locke</u> and the interests of Montana, with regards to water rights, are similar. Section 85-2-226, MCA, uses nearly identical language as § 314(c) FLPMA, and we agree with the Water Court that <u>Locke</u> is controlling.

The Supreme Court, in <u>Texaco, Inc</u>., provided a framework for the constitutional analysis of a file or forfeit statute. <u>Texaco, Inc.</u> (1982), 454 U.S. 516. The framework was adopted in both its "substantive and procedural dimensions," and we adopt it here. <u>Locke</u> 471 U.S. at 103. In <u>Texaco, Inc.</u>, the Supreme Court upheld the Indiana 'Mineral Lapse Act' which required that a statement of claim be filed on any mineral interest that had been unused for 20 years or the interest would be extinguished. The Supreme Court held that a forfeiture statute must provide all procedural

safeguards constitutionally due and that it must be a legitimate exercise of the state's police power such that the substantive effect of the statute does not work an impermissible intrusion on constitutionally protected rights. Texaco Inc. v. Short **(1982),** **454** U.S. **516.**

Montana has a long tradition of strictly adhering to the procedural requirements of hearing and notice. Ball v. Gee **(1990),** **243** Mont. **406, 795** P.2d **82.** In Ball, we held that "the forthright command of the due process clause; [is] one deprived of his property must be given notice and an opportunity to defend." Ball, **243** Mont. at **413.**

The sufficiency of the publication of notice concerning the filing deadline has not been challenged by the appellants. Notification of the deadline was published in all of Montana's daily newspapers and in at least one newspaper in each Montana county in July of **1979,** April of **1980** and again in April of **1981.** Notice was posted conspicuously in each county courthouse. Finally, notice was included with all statements of property tax, mailed by county treasurers, in **1979, 1980, 1981,** and **1982.** When the filing deadline was extended from January 1, **1982** to April **30, 1982,** notice was published once per week for three successive weeks in all Montana daily newspapers and a weekly newspaper in each county. Notice of the extension was also posted conspicuously in every county courthouse. In addition, the Department of Natural Resources published and distributed more than 10,000 copies of a document regarding how and when to file a claim. Representatives

of the Water Court traveled to numerous meetings across the State to further discuss the manner, method, and filing date for claims. Judge Lessley noted that of the 205,000 claims filed statewide, more than 98% were filed on time. Such notice indisputably satisfies due process requirements.

The appellants contend that § 85-2-226, MCA, operates in a manner that deprives those with a vested property right an opportunity to have their day in court before that right is divested. The appellants argue that before they can be said to have abandoned their water right, they should have opportunity to a hearing where they can show good cause for late filing and demonstrate that they have not in fact abandoned their right.

All of the claimants had 35 months to file their claim. The filing requirements were straightforward, and demanded only that a water user document historical use. Adequate opportunity was provided each of the claimants to show that they did not intend to abandon or forfeit their water rights. Furthermore, the Water Court provided an opportunity for all late claimants to request an evidentiary hearing to determine if the deadline had in fact been missed. We conclude that § 85-2-226, MCA, complies with the requirements of procedural due process.

We have already stated that the legislature has the power to mandate that rights be terminated if their holders do not take the affirmative action required by the legislature. The Court in Locke noted that the United States is the owner of the underlying fee title of all public lands and as such maintains broad powers over

12

the terms and conditions for which public land is used.  <u>Locke</u>, 471
U.S. at 104.  Similarly, the State of Montana owns the underlying
fee to all of the water in the State and thereby retains
substantial regulatory power over water rights.  Art. IX, Sec.
3(3), 1972 Mont.Const.; State v. McDonald, 220 Mont. 519, 524, 772
P.2d 598.  However, the regulatory power must be exercised
consistent with principles of substantive due process.

A statute must be reasonably related to a permissible
legislative objective to satisfy substantive due process
guarantees.  State v. Turk (1982), 197 Mont. 311, 643 P.2d 224.
The 1972 Montana Constitution mandates that the legislature
"establish a system of centralized records."  There can be no doubt
that § 85-2-226, MCA, was enacted for a permissible legislative
objective.

However, the appellants challenge whether or not § 85-2-226,
MCA, is reasonably related to the objective of adjudicating water
rights. It is contended that the Montana Constitution is a mandate
for the preservation of water for the use of Montanans and the
recognition and confirmation of all existing water rights.  Section
85-2-226, MCA, allegedly fails to be reasonably related to the
these objectives, because its operation results in the elimination
of existing water rights.

Before water rights can be adjudicated state wide, it is
essential that existing rights first be firmly established.
Section 85-2-226, MCA, is a reasonable means of compelling
comprehensive participation, extinguishing duplicative and

13

exaggerated rights, and ridding local records of stale, unused water claims. These are all necessary to meet the objective of adjudicating Montana's water. Furthermore, the filing duty is neither burdensome, unreasonable nor unrelated to the legitimate and proper legislative objectives as provided above. We note that neither the Supreme Court nor other states addressing the constitutionality of statutes requiring filing, have found the filing requirement to be more than a minimal burden. U.S. v. Locke (1985), 471 U.S. 84; Texaco, Inc. v. Short (1982), 454 U.S. 516; In re the Adjudication of the Water Rights of the Upper Guadalupe Segment of the Guadalupe River Basin (Tex. 1982), 642 S.W.2d 438; Matter of Chumstick Creek Drainage Basin (Wash. 1985), 694 P.2d 1065. In Locke, the Court held:

> Appellees failed to inform themselves of the proper filing deadline and failed to file in timely fashion the documents required by federal law. Their property loss was one appellees could have avoided with minimal burden:
> . . .

We therefore conclude that § 85-2-226, MCA, satisfies the guarantees of substantive due process.

III.

Does forfeiture of water rights under § 85-2-226, MCA, constitute a taking without just compensation in violation of the Montana and United States Constitutions?

The threshold inquiry for the takings claim is whether § 85-2-226, MCA, is a constitutionally valid exercise of the state's police power. We note that, in addition to being a separately raised issue, the inquiry was part of the Texaco, Inc. analysis for

14

constitutional validity of a forfeiture statute as described above.

The police power of the state is that which enables states to pass regulations for the health, safety and general welfare of the people. Yellowstone Valley Electric v. Ostermiller (1980), 187 Mont. 8, 608 P.2d 491. The police power regulation:

> must be reasonably adapted to its purpose and must injure or impair property rights only to the extent reasonably necessary to preserve the public welfare. (Citation omitted.) . . . Compensation is due . . . in cases which exceed regulation or impairment and there is an appropriation of property which amounts to a taking or deprivation of property for public use. Yellowstone Valley Electric, 187 Mont. at 15, 16 Am.Jur.2d Constitutional Law § 586.

It is undisputed that "quantification of the total water rights in the State of Montana is an expressed and necessary objective under the constitutional mandate for centralized records and is within the police power of the state." (Citation omitted.) McDonald v. State (1986), 220 Mont. 519, 529, 722 P.2d 598, 604, However, the appellants contend that § 85-2-226, MCA, constitutes an unconstitutional taking because invalidating existing water rights for failure to file extends beyond what is reasonably necessary to preserve the public welfare.

The taking argument fails for much the same reasons that the statute fulfills the guarantees of substantive due process. The filing requirement of § 85-2-226, MCA, could have been fully satisfied without any depravation of the owner's interest in and enjoyment of their property. The act of filing on time is not an unreasonable nor onoris burden and it does not deprive appropriators of the right to use water. It is the failure to file

15

on time, not the action of the State, that causes a property right to be extinguished. Texaco, Inc. v. Short (1982), 454 U.S. 516; In re Adjudication of the Water Rights of the Upper Guadalupe Segment of the Guadalupe River Basin (Tex. 1982), 642 S.W.2d 438; Matter of Chumstick Creek Drainage Basin (Wash. 1985), 694 P.2d 1065. The depravation occurs only as a result of the appropriators neglect or the neglect of their predecessors.

In Locke, the Supreme Court held:

it was their failure to file on time--not the action of Congress--that caused the property right to be extinguished. Regulation of property rights does not "take" private property when an individual's reasonable, investment-backed expectations can continue to be realized as long as he complies with reasonable regulatory restrictions the legislature has imposed. Locke, 471 U.S. at 107. (Citations omitted.)

In Texaco Inc., the Court held:

In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect. Texaco, Inc., 454 U.S. at 530.

We conclude, water rights, when forfeited under § 85-2-226, MCA, are forfeited as a result of owner negligence and not as a result of excessive and unreasonable state action. Section 85-2-226, MCA, does not result in taking property without just compensation and therefore the Water Court is affirmed.

We further conclude that § 85-2-226, MCA, is a proper exercise of the police power, satisfies all of the guidelines necessary to enact a forfeiture statute and complies with all aspects of due process as required by the Montana Constitution and the

16

Constitution of the United States.

## IV.

Does § 85-2-226, MCA, violate the equal protection clause of the Montana Constitution?

"When a statute is challenged on equal protection grounds, the first step is to identify the classes involved and determine whether the classes are similarly situated.'' Matter of C.H. (1984), 210 Mont. 184, 198, 683 P.2d 931, 938. The appellants contend the arbitrary deadline enforced by § 85-2-226, MCA, is an arbitrary date that unreasonably divides water claimants into two classes. One class retains their water right while the other class, late claimants, lose theirs without opportunity to show good cause for late filing. The appellants suggest that this classification discriminates against persons like themselves, who in good faith attempted to meet the statutory requirements.

We are not persuaded and do not find that § 85-2-226, MCA, creates different classes. All claimants were treated equally, provided equal notice, and given equal opportunity to file by the given deadline. The classification the appellants rely on is created by the appellants' own negligence. We conclude that § 85-2-226, MCA, was applied evenhandedly to all water claimants. Therefore, the equal protection challenge fails and the Water Court is affirmed.

## V.

Does § 85-2-226, MCA, constitute an impairment of contracts in

violation of Article 11, Section 31, of the Montana Constitution and Article I, Section 10, of the United States Constitution?

The appellants maintain § 85-2-226, MCA, renders invalid water rights upon which "substantial contractual relationships are based" and therefore violates the impairment of contracts clause. The appellants make no discernable argument nor provide an example of any contract alleged to be impaired.

Montana has adopted a three part test to determine whether legislation has violated the impairment of contracts clause. Western Energy Company v. Genie Land Company (1987), 227 Mont. 74, 737 P.2d 478; Neel v. First Federal Savings and Loan Association (1984), 207 Mont. 376, 675 P.2d 96; Energy Reserves Group, Inc. v. Kansas Power and Light Co. (1983), 459 U.S. 400, "The threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of the contractual relationship." Western Energy Co., 227 Mont. at 82. (Citations omitted.) Implicit in this inquiry is the existence of a contract. The appellants have failed to demonstrate the existence of any specific contract let alone its impairment. This is fatal to appellants' claim.

We conclude § 85-2-226, MCA, does not impair contracts in violation of the United States and Montana Constitutions. The Water Court is affirmed.

_____
Justice

We Concur:

_____
'Chief Justice

18

_William E. Smith_

_____

_____

_[signature]_ Justices

_Leonard H. Langen_
District Judge Leonard H. Langen
sitting for Justice Karla M. Gray

19

Justice John Conway Harrison, dissenting.

I dissent.  Few cases have come before this Court of more import to the citizens of this state, particularly those who make their living through agriculture, than this case.  Without water farms and ranches in this State economically cannot exist.  It is my position that under Article IX, Section **3** of the Montana Constitution, pre-1973 water rights are protected from legislative forfeiture.  Article IX, Section **3** provides in its entirety:

> **Water** rights.  **(1)** All existing rights to the use of any waters for any useful or beneficial purpose are hereby recognized and confirmed.
>
> (2) The use of all water that is now or may hereafter be appropriated for sale, rent, distribution, or other beneficial use, the right of way over the lands of others for all ditches, drains, flumes, canals, and aqueducts necessarily used in connection therewith, and the sites for reservoirs necessary for collecting and storing water shall be held to be a public use.
>
> (3) All surface, underground, flood, and atmospheric waters within the boundaries of the state are the property of the state for the use of its people and are subject to appropriation for beneficial uses as provided by law.
>
> **(4)** The legislature shall provide for the administration, control, and regulation of water rights and shall establish a system of centralized records, in addition to the present system of local records.

Appellants contend that subsection (1) provides a guarantee of existing water rights and any statutory scheme that obviates that guarantee is against the public policy of Montana.  I agree.  The constitution gives the power to the legislature to affirm <u>and</u> preserve existing water rights, but I disagree with the holding of the majority in that it does not give the legislature the power to

**20**

affirm or extinguish existing water rights.

Here, each of the appellants exercised his or her rights to the evidentiary hearings and each alleged different factual circumstances for having filed late (i.e., improper address on the claim form, lessor's neglect, and owner's absence). Evidence was presented by each appellant of a historical and continued use of water for various beneficial uses. The appellants contended that they in no way had "abandoned" their water rights. The court determined that each had filed late under § 85-2-226, MCA, and, therefore, had forfeited his or her claim. Examining the testimony of each of the appellants, I would have found a factual exception and, therefore, would not have declared the law constitutional. I do not find that the constitution delegates the power of forfeiture or extinguishes existing rights, but as I read it, it affirms and attempts to preserve those existing rights. The fact that the legislature is mandated to complete a record of all existing rights does not give the legislature the power to extinguish rights that are implicitly confirmed by our constitution.

> **DELEGATE DAVIS:** . . . The whole purpose, just for the purpose of the journal, is to establish, in the first sentence, that all existing water rights are <u>recognized and confirmed</u>--so no one will get any idea that we're trying to take away any vested or existing rights. . . . [Emphasis added.]

Verbatim Transcript, Montana Constitutional Convention, Vol. V, p 1302 (1971-1972).

Here, the appellants argue that public policy of protecting existing rights by preserving the present and existing system of local control is further supported by the constitutional mandate of

21

Article IX, Section 3(4), which establishes the centralized system "in addition to the present system. . . . "

Two cases of this Court since the 1972 Constitutional Convention: General Agric. Corp. v. Moore (1975), 166 Mont. 510, 534 P.2d 859, and McDonald v. State (1986), 220 Mont. 519, 722 P.2d 598, are cases, which, in my opinion, reaffirm the public policy of our constitution that confirms all water rights acquired under the 1889 constitution. Therefore, I would find that the legislature has acted unconstitutionally by enacting and adjudicating a procedure that abolishes a right granted by the Montana Constitution. Also, I would hold that any legislative act that operated to extinguish the pre-1973 water rights that had been confirmed by the 1972 constitution is contrary to the intent of the framers and, therefore, against public policy.

In addition, the appellants argue, and I agree, that abandonment, as historically defined by this Court, has always required at least a showing of non-use. See Tucker v. Jones (1888), 8 Mont. 225, 19 P. 571; 79 Ranch, Inc. v. Pitsch (1983), 204 Mont. 426, 666 P.2d 215. In those cases it is argued that the failures of those plaintiffs to file was related to various mistakes that had nothing to do with non-use. Here, the appellants have maintained continuous and beneficial use of their water rights. Failing to timely file does not imply that appellants have ceased to beneficially use their water rights. The majority adopted a presumption of abandonment for failure to timely file: this presumption is neither necessary nor true in fact, and for

22

that reason § 85-2-226, MCA, is constitutionally infirm.

In the instant case, the respondents contend that the Water Court's characterization of § 85-2-226, MCA, as a forfeiture statute, is accurate and fully supported by the United States Supreme Court. United States v. Locke (1985), 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64; Texaco, Inc. v. Short (1982), 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738. I cannot agree with the respondents' assertion that both Locke and Texaco, Inc. refute the appellants' argument that an irrebuttable presumption exists in § 85-2-226, MCA.

Locke involves the constitutionality of § 314(c) of the Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1744(c), which requires holders of mining claims to file, prior to December 31st of each year, a notice of intention to continue holding the mining claim. In Locke, Locke filed a notice one day past the deadline and his claim was deemed "abandoned." Locke challenged the constitutionality of the law on several grounds, including that the statute created an irrebuttable presumption which violated due process. Section 314 of FLPMA provides: "[F]ailure to file such instruments as required . . . shall be deemed conclusively to constitute an abandonment of the mining claim." Locke argued that the failure to timely file a claim should not extinguish the claim, but merely shift the burden to the claimant to prove the claim was not abandoned. There the Supreme Court held, "[a]lthough § 314(c) is couched in terms of a conclusive presumption of 'abandonment,' there can be little doubt

23

that Congress intended § 314(c) to cause a forfeiture of all claims for which the filing requirements . . . had not been met." <u>Locke</u>, 471 **U.S.** at **98**, 105 S.Ct. at 1794, 85 L.Ed.2d at 78.

In my opinion, the <u>Locke</u> decision is distinguishable and, therefore, not controlling. First, the appellants in their arguments, distinguish the purposes of FLPMA and Montana's Water Use Act. The purpose of FLPMA as articulated in <u>Locke</u> is allegedly to rid the federal lands of stale claims and to extinguish unused interest. In this case, to the contrary, the purpose of Montana law is to recognize and confirm all existing water rights. Second, the interests subject to the federal statute are not constitutionally recognized and confirmed as are the Montana interests. Third, the Montana statute allegedly fails to further the purpose of the Water Use Act and is, therefore, against the interest and the welfare of Montana's citizens. Section 314(c) allegedly complies with the goals of FLPMA and furthers the interest being pursued. Fourth, § 85-2-226, MCA, operates in judicial proceedings while the federal statute does not. Fifth, the federal statute was characterized as a forfeiture statute which the appellants contend our Montana statute is not.

In addition, the interest of the federal government recognized in <u>Locke</u> and the interest in Montana with regard to water rights, it is argued, are similar. The majority concludes that § 314(c) and § 85-2-226, MCA, are nearly identical and that the Supreme Court's analysis should be controlling. In <u>Locke</u>, the Supreme Court delineated a three-point test to determine when the

24

forfeiture statute passes constitutional muster. Two parts of the test address substantive and procedural due process. The third part of the test asks the question whether the legislature has the power to mandate that rights be terminated if the holders do not take affirmative action required by the legislature. In other words, part three asks if § *85-2-226*, MCA, is a lawful exercise of the State's police power.

I would hold that the statute does not satisfy the applicable constitutional test determined by <u>Locke</u>, and I would note there is a considerable difference between an unpatented mining claim and a water right that has been historically recognized by this Court prior to the majority's opinion.

I would, therefore, reverse and remand this matter to the Water Court for further hearings on the fact situations presented by the appellants.

_John Conway Harrison_
Justice

Justice Terry N. Trieweiler specially concurring.

I agree with the result arrived at by the majority. However, I am unable to agree with everything that is said in the majority opinion.

My particular concern is with Part II of the majority opinion. I cannot as easily as the majority reconcile the U.S. Supreme court's decisions in *Vlandis v. Kline* **(1973), 412 U.S. 441,** and *United States* v. *Locke* **(1985), 471 U.S. 84. To** me these decisions are inconsistent. *Vlandis* would seem to require reversal of the Water Court decision forfeiting appellant's water rights because § 85-2-226, MCA, creates an irrebuttable presumption of abandonment which is not universally true. However, in *Locke* the Supreme Court calls an abandonment a forfeiture and thereby arrives at a different result. Since *Locke* is the more recent and factually specific case, I agree that it is controlling on the due process issue. However, I do not agree with the reasoning in *Locke,* nor do I agree with the majority's willingness to so easily distinguish *Vlandis*.

_____
Justice

26