# FILED

12/06/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0071

DA 16-0071

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 319N

RON KORMAN and MAXINE KORMAN,

        Objectors; Counter-
        Objectors and Appellants.

APPEAL FROM:    Montana Water Court, Cause No. 40M-71
                         Honorable Russ McElyea, Chief Water Judge

COUNSEL OF RECORD:

        For Appellants:

                Ron Korman (Self Represented), Maxine Korman (Self-Represented),
                Hinsdale, Montana

Submitted on Briefs:  November 2, 2016

Decided:  December 6, 2016

Filed:

_____
                      Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Ron and Maxine Korman appeal from the Water Court's Order Adopting Master's Report, filed November 19, 2015. We affirm.

¶3     The Kormans objected to their own claims in Water Court proceedings. The Kormans assert that they own "vested" water rights and not just "existing" water rights, and that the Water Court erred by refusing to apply that status. The Kormans also contend that the priority dates for their various water claims should be amended to reflect a uniform priority date of December 31, 1893. This claim is based upon their contention that their stockwatering rights should bear the priority dating to the earliest use of open range by ancestral free grazers.[1] The Water Court affirmed the Water Master's Report, concluding that the Kormans had failed to show a connection between water use by the ancestral free grazers sufficient to make the Kormans successors to water rights, if any, that these people perfected. The Water Court changed the priority dates for some of the Kormans' groundwater claims, based upon the evidence the Kormans presented.

---

[1] We refer to the large cattle operations in the days of the open range between dispossession of Native Americans and the advent of homesteading as "ancestral free grazers." The Kormans claim to be successors in interest to these grazers and rely upon their presumed water use as the basis for many of their claims.

¶4      Article IX, Section 3 of the Montana Constitution provides that all "*existing rights*

to the use of any waters for any useful or beneficial purpose are hereby recognized and

confirmed." (Emphasis added.) This provision expressly confirms all pre-1973 water

rights as a matter of constitutional law, and it confirms the Kormans' existing water

rights. No other category of pre-1973 rights is provided.

¶5      The Kormans claim that their "vested" water rights are exempted from the

adjudication required of all existing water rights in Montana. If so, then the Kormans

would have a status not afforded any other existing water right holders. If the Kormans'

claimed vested right exemption were applied to all existing water right claimants, the

state-wide water right adjudication process would come to an abrupt halt. The provision

of the Constitution providing for a system for "the administration, control, and regulation

of water rights" would be rendered null and void.

¶6      It is well established that "Montana has always protected, by law and the decisions

of this Court prior to 1972, and by the Montana Constitution since 1972, any beneficial

irrigation right within the original appropriation of water." *McDonald v. State*, 220

Mont. 519, 525, 722 P.2d 598, 692 (1986). This protection extends to the actual

pre-1973 beneficial use of water and the Water Court has a duty to determine and protect

that right. *McDonald*, 220 Mont. at 535, 722 P.2d at 608 (Order on Rehearing). The

Montana Constitution preserves and protects rights to "such amount of water as, by

pattern of use and means of use, the owners or the predecessors put to beneficial use."

Montana law requires that "all water rights, regardless of prior statements or claims as to

the amount, must nevertheless, to be recognized, pass the test of historical, un-abandoned

3

beneficial use. . . . To that extent only the 1972 constitutional recognition of water rights is effective and will be sustained." *McDonald*, 220 Mont. at 529, 722 P.2d at 604. Existing water rights are subject to determination in the water rights adjudication process, and "have not been granted indefeasible status." *In the Matter of the Adjudication of the Existing Right to the Use of Water*, 253 Mont. 167, 174, 832 P.2d 1210, 1214 (1992). The Kormans are entitled to a declaration and protection of their existing water rights.

¶7 The Kormans claim a uniform 1893 priority date for all of their stockwater claims based upon the presence of ancestral free grazers on the land they now own. The Water Master's Report found: "The claimants do not know who was watering the stock, where the stock was watered or when those appropriations first occurred." In response to their objections, the Water Court examined the historical record the Kormans presented. The Water Court held that even assuming that the ancestral free grazers appropriated stockwater prior to 1893, there was "no evidence those water rights were conveyed to the Kormans or their predecessors." The fact that the Kormans now own land grazed in the nineteenth century was not sufficient to make any such appropriations appurtenant to the land and to make them the property of the Kormans. The Water Court determined that the Kormans were unable to show a sufficient relationship between themselves and the ancestral free grazers to relate the present stockwater claims back to 1893. *St. Onge v. Blakley*, 76 Mont. 1, 20, 245 P. 532, 538 (1926).

¶8 The Water Court found a lack of factual support for the Kormans' claims that the priority date for their irrigation rights should be earlier than the Kormans originally claimed. However, the Water Court considered the evidence regarding the Kormans'

4

groundwater claims and found that some changes were warranted. The Water Court "slightly" modified the priority dates, and one claim received a 1916 priority date, a change from the original 1950 date the Kormans initially claimed.

¶9 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the Water Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled law, which the Water Court correctly interpreted.

¶10 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON

5