No. 14740

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

FAYE M. ECKART, a woman; MARY
(nee Hubbard) SKELTON, a woman;
and JOHN HUBBARD, a single man,

                 Plaintiffs and Respondents,

    -vs-

RODERICK R. HUBBARD, a single man; et al.,

                 Defendants and Appellants.

---

Appeal from:  District Court of the Eighth Judicial District,
              Honorable R. J. Nelson, Judge presiding.

Counsel of Record:

    For Appellants:

        S. M. Swanberg argued, Great Falls, Montana
        Roderick R. Hubbard, San Diego, California

    For Respondents:

        Burton, Waite & Cruikshank, Great Falls, Montana
        Charles Cruikshank argued, Great Falls, Montana

---

                Submitted:  September 14, 1979

                Decided:  NOV 21 1979

Filed:  NOV 21 1979

_____Thomas J. Kearney_____
                      Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an action to quiet title to two tracts of land in Cascade County originally owned by Russell C. Hubbard.

Defendants Roderick Hubbard and Michael Jean Null are issue of Russell Hubbard's second marriage to Constance E. Hubbard, who later became Constance E. Washburn and is now deceased. Plaintiffs John Hubbard and Mary Skelton are children of Hubbard's third marriage to Faye Hubbard, now Faye Eckart, who is also a plaintiff in this action.

Russell C. Hubbard, the father, acquired the two tracts of land in question from his mother by warranty deed dated March 1, 1939. On June 1, 1949, Hubbard conveyed Tract A of the lands by warranty deed to Ann Bladorn and Tract B of the lands by warranty deed to his very close personal friends, Alden and Ina Lohrke. Ann Bladon thereafter came into default on Tract A and, on November 15, at Hubbard's insistence, conveyed that said tract to the Lohrkes. Both deeds to the Lohrkes were made without their knowledge and lacked consideration. Hubbard did not inform Alden Lohrke of the conveyances of the land until approximately two years later when he casually remarked that the Lohrkes owned the land. Lohrke assumed that, since Hubbard's financial condition was "marginal," Hubbard had placed legal title in the Lohrkes' names to protect the land for his own purposes. Lohrke never treated the land as if it were his, only that he had a "bare" or "naked" title. Hubbard paid the taxes on the land, leased it and kept the income from the leases.

Prior to Hubbard's conveyances of the two tracts of land to the Lohrkes, several liens attached to the tracts as well as to other property which Hubbard owned. These liens

were the result of the terms of a divorce decree between Hubbard and his second wife Constance. The decree provided for support payments for the support of the couple's two children, Roderick and Michael Jean. As the payments became delinquent, liens attached to Hubbard's land. Some of the liens on land other than the two tracts were released after the divorce. Richard Eklund, Constance's father, testified that Constance released these liens on Hubbard's promise that the two tracts would be placed in trust for the children. The liens on the two tracts, however, were never released, and a written trust was never drawn.

On October 18, 1953, Hubbard married his third wife, Faye. Three children were born of this marriage, two of whom survived: John, born March 1, 1955, and Mary, born on July 4, 1956.

Hubbard died intestate on April 3, 1972, in Cascade County, survived by his wife Faye and four children. Prior to his death, he informed Alden Lohrke on at least two occasions that he had hoped the two tracts of land would go to his children. One of these conversations took place approximately two or three years after Hubbard conveyed the land to the Lohrkes. The other took place between 1970 and 1972. Lohrke testified that the first was a casual, "off the cuff" remark in which Hubbard did not specifically identify what he meant by "his children." Knowing Hubbard rather well, Lohrke felt that the term might be representative of a class and included not only his present but any future children. With respect to the second conversation, Lohrke understood Hubbard to mean all four of his children.

On May 18, 1973, Hubbard's son Roderick, who is a practicing attorney in San Diego, obtained without consider-

ation from Alden Lohrke two quitclaim deeds regarding the land. He also instituted proceedings for the probate of the estate of Ina Lohrke, who had died intestate on June 13, 1966. The proceedings were instituted for the purpose of clearing up the legal title to the land, since the Lohrkes' daughter, Linda Russell, had acquired an interest in the land upon her mother's death. Linda, in turn, quitclaimed her interest in the two tracts of land to Roderick without consideration on June 14, 1973. The Lohrkes transferred the lands to Roderick with the understanding that the transfers were being made for the benefit of all four children.

Roderick, of his own volition, acquired the land in trust for the four children. In a response to a telephone call from Faye concerning the land, Roderick wrote:

> "There is not much I can do as long as the title is in Alden's name; therefore I suggest that Alden transfer his interest in the property to me . . . I will hold the property in trust for the children."

Sometime later, however, Roderick changed his position with respect to the land. Instead of holding the land in trust for all four children, Roderick claimed the land for himself and Michael Jean because of the liens for support payments on which his father had been delinquent. Roderick insists that, at the time of the conveyances from the Lohrkes to himself, he was unaware of the existence of the liens. When he became aware of them, he contends that he informed Alden Lohrke of the liens and that Lohrke agreed that the land should be Roderick's and Michael Jean's. Lohrke, on the other hand, denies these things. Roderick admits that he took no action of any kind to enforce the liens for the delinquent support payments when he served as the executor of his mother's estate in 1973. He explained

that he did not take any action because Lohrke purportedly agreed to the validity of his mother's liens and to the fact that the land was his and Michael Jean's.

Plaintiffs brought this action in District Court to quiet title to the two tracts of land, claiming that they had an interest in their ownership. Defendants claimed sole ownership of the land on the basis that Hubbard created a constructive or resulting trust for them in satisfaction of delinquent support payments under the divorce decree between Hubbard and his second wife.

At trial without jury on July 10, 1978, the District Court made the following findings: that no trust was created by the conveyances of the two tracts from Hubbard to the Lohrkes; that it was immaterial whether a trust was created because legal title to the property vested in Hubbard's estate upon his death and, under the laws of intestacy, Faye became entitled to one-third of the property and the children shared equally in the remainder; and, that collection on the delinquent support payments was barred by the statute of limitations. From this judgment, appellants appeal.

The single issue presented for review is whether there was sufficient evidence to support the holding that no trust was created by the conveyances from Hubbard to the Lohrkes and that the property remained in Hubbard's intestate estate.

Our attention is first drawn to the kinds of trusts that may be created in this state. Montana separates trusts into two classes: voluntary trusts, otherwise known as express trusts, and involuntary trusts, otherwise known as implied trusts. Section 72-20-101, MCA; Platt v. Platt (1959), 134 Mont. 474, 480, 334 P.2d 722, 727. The most

distinguishing characteristic between the two classes of trusts is that voluntary or express trusts depend for their creation upon a clear and direct expression of intent by the trustor. Involuntary or implied trusts arise by operation of law and are concerned with implied or presumed intent, or are not concerned with intent at all. Bogert on Trusts, 5th ed., §71, p. 262; section 72-20-103, MCA; Platt v. Platt, supra. Both kinds of trusts, however, must be established by evidence which is clear, convincing, and practically free from doubt. First National Bank of Twin Bridges v. Sant (1973), 161 Mont. 376, 386, 506 P.2d 835, 841; Barrett v. Zenisek (1957), 132 Mont. 229, 238, 315 P.2d 1001, 1006.

Here appellants seek to have a trust declared relating to certain real property. Montana statutes allow both classes of trusts to be created with respect to real property. Involuntary trusts may be created, for example, when a court implies or presumes an intent to create a trust or simply declares, employing the principles of equity, that the trust shall be said to exist. Nothing else is required. Voluntary trusts, however, depend upon a written instrument for their creation. Section 72-24-102, MCA, provides:

> "No trust in relation to real property is valid unless created or declared by:
>
> "(1) a written instrument, subscribed by the trustee or by his agent thereto authorized by writing;
>
> "(2) the instrument under which the trustee claims the estate affected; or
>
> "(3) operation of law."

It is clear that the District Court was correct in holding that an express trust was not created. Neither party introduced evidence of a written document in which a trust was created or declared. What was introduced, rather,

was simply testimony that Hubbard had conveyed certain land to the Lohrkes which was later explained by an oral statement. Approximately two years after the conveyances, Hubbard casually remarked to Lohrke that title to the land was in Lohrke's name and that Hubbard wanted the land to go to his children. These acts are not sufficient to create a voluntary or express trust involving real property.

The possibility remains, however, that an involuntary trust was created. Involuntary trusts relating to real property arise by operation of law and are of two kinds, resulting and constructive. Platt, supra. Constructive trusts spring from fraud, mistake, undue influence, the violation of a trust, or other wrongful acts. Platt, supra. Constructive trusts occur where the parties have expressed no intent to create a trust, nor does the court presume that any intent existed. Rather, the court creates the trust to work an equitable result. Bogert, supra, §71, p. 263. Section 72-20-111, MCA, provides:

> "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act is, unless he has some other or better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would have otherwise have had it."

The evidence here fails to support that a constructive trust was created by the conveyances from Hubbard to the Lohrkes. In no way may it be said that Alden Lohrke gained the property by a wrongful act. Lohrke and Hubbard were longtime friends who had great confidence and trust in each other. Lohrke described Hubbard as "close to being a younger brother." Hubbard voluntarily transferred the property to Lohrke without his knowledge because Hubbard was confident that it would be "in good hands." The District Court was

correct, therefore, in holding that no constructive trust existed.

A resulting trust occurs where, as a result of certain acts, a court finds that there is an implied intent to create a trust and imposes a trust to achieve an equitable result. Usually resulting trusts involve cases where the parties have used ambiguous language which the court construes as showing a trust intent, or where the parties have expressed no intent to create a trust by words, but have performed acts from which the court infers that a trust was intended. Bogert, supra, §71, p. 262.

Where an express trust fails and the court finds a resulting trust, the trust property is returned to the settlor, or his successors in interest if he is dead, provided that the settlor has not expressly or impliedly made a different disposition of the equitable interest under the trust.

> "Where an express private trust is created gratuitously and it fails for any reason, a problem arises as to the disposition of the trust property. Shall the trustee be allowed to retain it for his own benefit? . . . Usually the only defensible result is to return the property to the settlors or his successors . . .
>
> "The courts declare this return to the settlor, or if he is dead, to his successors in interest, and they often do it on the theory of a resulting trust . . .
>
> "Thus, if a settlor of a private trust transfers property inter vivos . . . to named trustees, as a gift, but fails to describe the beneficiaries at all or describes them in an uncertain way . . . the usual result is that the property results to the settlor if he is living, or to the successors of the settlor who would take the kind of property which was the subject matter of the trust." Bogert, supra, §75, pp. 281-282.

In this case it was possible for the District Court to have declared a resulting trust on behalf of defendants

and/or plaintiffs. An intent to create a trust could have been implied from the circumstances surrounding the conveyances. Hubbard's statement that he wanted the property to go to his "children" could also have been regarded as sufficiently definite to include his children as a class or his children at the time of the conveyances.

However, the District Court held instead that it was immaterial whether a trust was created because title to the property vested in Hubbard's estate upon his death and, under the laws of intestacy, Faye became entitled to one-third of the property and the children shared equally in the remainder.

The District Court did not err in rendering such a holding. We have seen, for the aforementioned reasons, that the District Court could not have declared either an express trust or a constructive trust was created. The circumstances facing the court left open only the possibilities of a resulting trust or that no trust existed. Whatever alternatives or devices available to the court, the result was the same. If no trust existed, the proceeds had to return to Hubbard or his probate estate. If a resulting trust was imposed, the property resulted to Hubbard or, if he was dead, to his successors in interest. In this sense, therefore, it was immaterial whether a trust was created. The property had to be returned to Hubbard's estate.

We hold, therefore, that there was sufficient evidence to support the holdings of the District Court that there was no trust created and that the trust property be returned to Hubbard's estate to be distributed according to the laws of intestacy. Accordingly, we direct the District Court to require that Roderick Hubbard, presently holding title to

the two tracts of land by quitclaim deed from Alden Lohrke, take all actions and execute all instruments necessary to return the property to Hubbard's estate.

Judgment affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices