No. 93-285

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

VIRGINIA LAWRENCE,

     Plaintiff and Respondent,

v.

MICHAEL H. CLEPPER, Personal
Representative of the Estates of
JANE RAY TAYLOR and FRANK M. TAYLOR,

     Defendant and Appellant.

FILED

DEC 22 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Twenty-first Judicial
District, In and for the County of Ravalli
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Harold V. Dye, Milodragovich, Dale & Dye,
Missoula, Montana

     For Respondent:

          J. Robert Planalp and Calvin L. Braaksma,
Landoe, Brown, Planalp & Braaksma,
Bozeman, Montana

Submitted on Briefs: November 5, 1993

Decided: December 22, 1993

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiff Virginia Lawrence brought this claim for restitution from the estate of Jane R. Taylor and Frank M. Taylor in the District Court for the Twenty-first Judicial District in Ravalli County. The District Court concluded that prior to their deaths, Taylors received money belonging to Lawrence as constructive trustees, and that under the equitable theory of unjust enrichment, she was entitled to restitution. The District Court entered judgment in Lawrence's favor in the amount of $130,816.63, together with prejudgment interest from October 10, 1990. Michael Clepper, personal representative of Taylors' estates (defendant), appeals. We reverse the judgment of the District Court.

The issues raised by defendant on appeal are:

1. Did the District Court err when it found that Taylors possessed a state of mind which defeated their claim that they were innocent transferees of plaintiff's property?

2. Is a person who receives property in exchange for an antecedent debt an innocent purchaser for value under Montana law?

FACTUAL BACKGROUND

During April and May of 1990, Frank and Jane Taylor transferred $85,108.63 from Frank's retirement account, and $37,900 from their personal savings, to Kenneth Holm who held himself out as an investment counselor in California under the business name, Income Financial Advisor.

In the summer of 1990, Mr. Taylor, who was a retired dentist, and Mrs. Taylor moved to Victor, Montana. They bought a home next

2

to Jack Stark, who is an attorney and banker employed at the Farmers State Bank in Victor. However, Mr. Stark first met the Taylors when they made an appointment to see him at the bank on July 30, 1990. On that occasion, they brought with them a document which evidenced the money they had supposedly invested through Holm, and told Stark that they wanted their money back because they had plans to invest it elsewhere. The document that they brought into Stark's office was not in evidence at trial. However, from his memory, Stark recalled that it documented the amount of money Taylors had invested through Holm and indicated that they were entitled to have it returned to them on the condition that they provide Holm with 30 days' notice.

During their meeting with Stark on July 30, the three of them composed a letter to Holm in which Taylors requested that their money be returned.

Plaintiff Virginia Lawrence and her husband had invested money through Holm from 1987 through October 10, 1990. Mrs. Lawrence's husband died on April 28, 1990, and left assets in a trust for the purpose of making payments on the couple's home so that Mrs. Lawrence could continue to reside at that home. However, due to unspecified problems with the administration of the estate, several mortgage payments were missed.

In early September, shortly after 30 days from the time Holm was notified that Taylors wanted their money back, Holm approached Lawrence and suggested that she secure her home with an additional mortgage; that he invest the proceeds from that loan; and that,

3

combined with what she had already invested through him, he would pay her sufficient amounts each month to make her loan payments until the problems with her husband's estate could be resolved. His explanation was that the second mortgage would be a short term loan which could be paid off once the estate problems were resolved. According to Lawrence's testimony, she was at first reluctant to do so, but when the problems with her husband's estate continued, she changed her mind.

Holm made arrangements to obtain a loan for Lawrence from a southern California bank in the amount of $215,000. After paying fees and closing costs, she realized $198,015.50.

When the loan proceeds were distributed to her, Lawrence and Holm went from the bank where the loan was obtained to a second bank where the loan proceeds were converted to a cashier's check made payable to Holm. She instructed Holm to invest her money in the commodities future market and asked that the investments be backed by treasury bonds. This transfer occurred on October 10, 1990.

Officials from Holm's bank testified that on that same date he deposited $198,015.50 in his account, and that the following day, on October 11, he instructed the bank to wire $91,615.63 to Frank Taylor's retirement account at a Denver bank, and $39,201 to Frank and Jane Taylor's personal account at Western Federal Savings Bank in Missoula. Those same officials said that had it not been for the deposit made by Holm on October 10, there would have been no funds in his account with which Holm could have made the wire

4

transfers to Taylors. The wire transfers to Taylors were in satisfaction of the demand letter they had sent to Holm on July 30, 1990.

As part of his arrangement with Lawrence, Holm had agreed to make her mortgage payments for the next 12 months. However, the November mortgage payment was late, and the December payment was first late, and then returned because there were insufficient funds to cover it. When she tried to contact Holm to find out the reason for the late payments, she had difficulty reaching him, and finally consulted an attorney, who attempted to recover the amounts she had invested with Holm, but was unsuccessful. She then consulted a district attorney in California, who advised her that eleven other people had been similarly victimized by Holm. She filed a complaint against him with the Commodities Future Trading Commission and recovered judgment against Holm in the amount of $411,000 on the grounds that Holm obtained money from her by fraud. However, at the time of trial, Holm's whereabouts were unknown.

Jane and Frank Taylor died on March 30, 1991. Michael H. Clepper is the personal representative of their estates.

On December 18, 1991, Lawrence filed this complaint in which she contended that the money she paid to Holm on October 10, 1990, was obtained by fraud and deception and was illegally transferred to Taylors without her permission. She alleged that Taylors were aware of the source of the funds they received, and therefore, they were unjustly enriched at her expense. For that reason, she

5

alleged that the court should impose a constructive trust for her benefit on the funds obtained by Holm and transferred to Taylors.

In response to Lawrence's complaint, defendant denied that Taylors had any knowledge that the money which was repaid by Holm was obtained improperly, and as an affirmative defense, alleged that Taylors were bona fide transferees for value.

Both parties moved for summary judgment.

In support of his motion, defendant offered uncontradicted evidence that prior to July 30, 1990, Taylors had invested $123,008.63 with Kenneth Holm, doing business as Income Financial Advisor, and that that amount, together with interest, is what he repaid them on October 11. Based on that evidence, defendant argued that Taylors were transferees for value without knowledge of Holm's fraudulent activities, and therefore, that Lawrence was not entitled to restitution from them based on the law of constructive trusts.

In turn, Lawrence offered evidence that the money obtained fraudulently from her by Holm was traceable to Taylors. She argued that she was entitled to summary judgment because there was no evidence that Taylors were without notice of Holm's wrongdoing, and furthermore, that they provided nothing of value to Holm in exchange for the amounts that he returned to them.

The District Court denied both motions for summary judgment based on its conclusion that there was a question of fact regarding the extent of knowledge that Taylors had about the source of the

6

funds which were returned to them, and that neither party had offered sufficient evidence regarding this factual issue.

This case went to trial without a jury before the District Court on October 28, 1992. The only witnesses who testified at trial were Virginia Lawrence and Jack Stark. The testimony of Birdie Risen, a bank official at Holm's bank in Carlsbad, California, was offered by deposition.

After considering the evidence, the District Court made factual findings and a conclusion of law which are the basis for defendant's appeal. The District Court found that Taylors went to see an attorney on July 30, 1990, because they were anxious and worried about their investments, and that their anxiety, concern, and distrust of Holm continued after they demanded return of their money, as was evidenced by repeated telephone calls to him between the dates of September 10 and October 11, 1990.

The District Court also found that Taylors did not consider Holm their debtor and did not give anything of value to Holm in exchange for the money that he transferred to them on October 11. The court finally found, assuming Taylors were creditors of Holm, that the October 11 transfer to them was for an antecedent debt, and therefore, without consideration.

The District Court concluded that, based on Taylors' apparent anxiety, suspicion, and distrust of Holm, they did not qualify as bona fide purchasers. It also concluded that because nothing of value was provided to Holm in exchange for the money he returned to

7

Taylors, they were not bona fide purchasers for value as a matter of law.

Based on other findings, the District Court impressed a constructive trust on the assets of Taylors' estates, based on the theory of unjust enrichment, and ordered that the amount paid to them by Holm on October 11 be repaid to Lawrence with interest from the date of October 10, 1990. Defendant moved, pursuant to Rule 59, M.R.Civ.P., for a new trial, or in the alternative, that the District Court amend its findings and conclusions. That motion was denied. Defendant appeals from the judgment entered by the District Court in favor of Lawrence, and from the District Court's denial of his post-trial motion.

The bases for defendant's appeal are that the District Court's findings regarding Taylors' state of mind are unsupported by evidence, and therefore, clearly erroneous, and that the District Court erred as a matter of law when it concluded that Taylors could not be innocent transferees for value because no consideration was paid to Holm for the money that he transferred to them.

## DISCUSSION

We have long recognized in Montana that in transactions between two parties, the principles of equity sometimes mandate the imposition of involuntary trusts. In *Eckart v. Hubbard* (1979), 184 Mont. 320, 325, 602 P.2d 988, 991, we recognized that:

> Involuntary trusts may be created, for example, when a court implies or presumes an intent to create a trust or simply declares, employing the principles of equity, that the trust shall be said to exist. Nothing else is required.

8

Based upon the statutory scheme that was in effect at that time, we held that:

> Constructive trusts spring from fraud, mistake, undue influence, the violation of a trust, or other wrongful acts. *Platt[s]*, [134 Mont. 474, 480, 334 P.2d 722, 727]. Constructive trusts occur where the parties have expressed no intent to create a trust, nor does the court presume that any intent existed. Rather, the court creates the trust to work an equitable result. Bogert [on Trusts, 5th ed.], § 71, p. 263.

*Eckart*, 602 P.2d at 991.

In 1989, Montana enacted a new trust code found at Chapters 33-36 of Title 72 of the Montana Code Annotated. Section 72-33-219, MCA, of that code provides for "constructive trusts" under the following circumstances:

> A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it.

In Montana, therefore, the equitable creation of a constructive trust is dependent upon, and related to, the equitable principle of unjust enrichment. The creation of a constructive trust need not be limited to the person who obtained property by fraud or deception from another. If that property is transferred by the wrongdoer to a third party who would be unjustly enriched if he or she was allowed to keep it, a constructive trust can be created to prevent such unjust enrichment. The notion of unjust enrichment of a third party usually involves the issue of notice to that party regarding the manner in which the property was

9

originally acquired such that allowing the third party to keep the property would be inequitable or unjust.

> The phrase "unjust enrichment" is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefore. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.

> . . . However, although unjust enrichment is often referred to or regarded as a ground for restitution, it is perhaps more accurate to regard it as a prerequisite, for usually there can be no restitution without unjust enrichment. It is defined as the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience. A person is enriched if he has received a benefit, and he is unjustly enriched if retention of the benefit would be unjust. Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another.

> . . . .

> . . . It is said to be fundamental that for a person to be entitled to restitution, he must show not only that there was unjust enrichment, but also that the person sought to be charged had wrongfully secured a benefit, or had passively received one which it would be unconscionable for him to retain.

66 Am. Jur. 2d *Restitution and Implied Contracts* §§ 3-4 (1973).

For these reasons, courts of equity have not allowed restitution from third parties who came into possession of another's property innocently, even though that property was

10

originally obtained by fraud or mistake. Therefore, Restatement of the Law of Restitution, § 13 (1937) provides that:

> A person who has entered into a transaction with another under such circumstances that, because of a mistake, he would be entitled to restitution from the other,
>
> > (a) is not entitled to restitution from a third person who has received title to or a legal interest in the subject matter either from the other or from the transferor at the direction of the other, and has given value therefor without notice of the circumstances . . . .

*Comment a* to § 13 makes clear that the same principle applies to property obtained by fraud.

Section 172 of Restatement of the Law of Restitution discusses the situation of innocent third-party transferees where, as here, the issue is the imposition of a constructive trust. That section provides:

> (1) Where a person acquires title to property under such circumstances that otherwise he would hold it upon a constructive trust or subject to an equitable lien, he does not so hold it if he gives value for the property without notice of such circumstances.
>
> (2) In the Restatement of this Subject such a transferee is called a bona fide purchaser.

The reason for the rule established by § 172 is illustrated in *Comment a* to the same section where it states that:

> The principle that a person who innocently has acquired the title to property for which he has paid value is under no duty to restore it to one who would be entitled to reclaim it if he had not been innocent or had not paid value therefor, is of wide application, being a limitation upon the principle that a person who has been wrongfully deprived of his property is entitled to restitution. <u>The question in such cases is which of two innocent persons should suffer a loss which must be borne</u>

11

by one of them. The principle which is applied by courts of equity is that they will not throw the loss upon a person who has innocently acquired title to property for value. The bona fide purchaser is not only entitled to retain the property free of trust, but he is under no personal liability for its value.

This principle is most frequently applied to the situation where a person holds property subject to a constructive trust and transfers it to a person who pays value without notice of the facts which gave rise to the constructive trust; in which case a constructive trust is cut off. The situation arises, for example, where a person obtains property by fraud and transfers the property to a person who pays value without notice of the fraud. [Emphasis added].

Restatement of the Law of Restitution, § 172, *Comment a* (1937).

With that background, we address the issues raised on appeal.

I.

Did the District Court err when it found that Taylors possessed a state of mind which defeated their claim that they were innocent transferees of plaintiff's property?

It is undisputed that Holm obtained Lawrence's money by fraud. Under that circumstance, he held the money, subject to a constructive trust, for Lawrence's benefit. If the property, however, was transferred to Taylors for value, and if they had no notice of the circumstances which gave rise to the trust, the trust is cut off. This first issue relates to whether there was evidence from which the District Court could find that Taylors had notice of Holm's conduct which gave rise to the trust.

The District Court made no specific finding that Taylors had notice of Holm's fraudulent conduct. Instead, the District Court simply found that Taylors were anxious about their investment and

12

were suspicious and distrustful of Holm. From those findings, the District Court concluded that they did not possess a state of mind which would qualify them as innocent transferees.

It is correct that if Taylors were aware of facts which should have caused further investigation, and if that investigation would have led to knowledge of Holm's conduct, then they are charged with notice. Section 174 of Restatement of the Law of Restitution provides that "[e]xcept in the case of the holder of a negotiable instrument, a person has notice of facts giving rise to a constructive trust if he knows the facts or should know them." (Emphasis added).

It was presumably the District Court's conclusion that based on Taylors' mistrust of Holm and the temporary difficulty they had obtaining their money, they should have known that the money was obtained by inappropriate means.

On appeal, defendant argues that there is no need to decide whether distrust or anxiety equates with notice because there was no evidence that Taylors were anxious or distrustful of Holm.

Lawrence, on the other hand, responds that the District Court's findings in that regard were supported by substantial evidence, and offers the following examples:

1. Taylors' attorney, Stark, distrusted Holm;

2. During a telephone conversation between Holm and Mrs. Taylor, Holm asked if she did not trust him;

3. Taylors made numerous telephone calls to Holm during the month prior to the return of their money;

13

4. The mere fact that Taylors sought the return of their money several months after investing it with Holm, suggests that they did not trust him.

Because of the trial court's unique opportunity to resolve issues of fact, we will defer to a District Court's findings unless they are clearly erroneous. However, findings which are not supported by substantial credible evidence are clearly erroneous. *Interstate Production Credit Association v. DeSaye* (1991), 250 Mont. 320, 820 P.2d 1285.

In this case, defendant's contention that Taylors were innocent transferees was an affirmative defense pursuant to Rule 8(c), M.R.Civ.P., and defendant, therefore, had the burden of producing evidence in support of that defense. Section 26-1-401, MCA. That burden was made difficult by the fact that by the time of trial both of the Taylors were deceased. However, in meeting that burden, defendant had a right to rely on relevant statutory presumptions.

Section 26-1-602, MCA, sets forth a number of disputable presumptions. It provides that:

> All other presumptions are "disputable presumptions" and may be controverted by other evidence. The following are of that kind:
>
> . . . .
>
> (7) Money paid by one to another was due the latter.
>
> . . . .
>
> (19) Private transactions have been fair and regular.

14

These statutory presumptions satisfied defendant's burden of proof in support of its affirmative defense, and are conclusive unless controverted by other evidence.

As pointed out previously, the only witnesses who testified in this case were Lawrence, an official from Holm's bank in California, and Jack Stark, Taylors' attorney. Neither Birdie Risen, the bank official, nor Lawrence, had ever met Taylors, and neither offered any testimony about the extent of Taylors' knowledge of Holm's activities.

Neither did Stark, who assisted Taylors in their effort to obtain the return of their money and saw them occasionally as neighbors, offer any evidence to indicate that they had notice of Holm's activity or a reason to further investigate his activity. In fact, he testified that Taylors never expressed frustration with Holm, nor did he get the impression that they were frustrated with him. Although he personally harbored some suspicion of Holm based on his experience as a banker, he did not express that suspicion to Taylors, and in fact, testified that his suspicion was lessened when he learned that Holm had previously returned $60,000 to Taylors' bank which had been mistakenly sent to Holm.

Stark testified that if Taylors had reasons for seeking the return of their money from Holm, other than a preference to put it into local investments, he was unaware of those reasons. Although Holm did call Mrs. Taylor after receiving the letter that was sent on July 30, and did question whether they trusted him, Stark made

15

it clear that it was Holm who raised the issue of trust and that it was never mentioned by Mr. or Mrs. Taylor.

In fact, Stark testified that after sending the July 30 letter requesting return of Taylors' money, the subject of its return did not come up again in his conversations with his neighbors until sometime in November, when out of curiosity, he inquired about the money and was advised by Taylors that they had received it. However, at no time did they indicate to him that they were relieved at the return of their investment.

Stark testified that after his initial meeting with Taylors in his office, and after the letter was sent that was produced at that meeting, Taylors did not seek any further advice from him about the return of their money, and during none of his informal conversations with Taylors after that date did they express any concern to him about their transactions with Holm.

In summary, Stark testified that at no time during any of his conversations with Taylors about Holm was the term or subject of distrust ever mentioned.

It is true that findings of fact can be based on reasonable inferences. However,

[a]n inference must be founded:

(1) on a fact legally proved; and

(2) on such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business, or the course of nature.

Section 26-1-502, MCA.

16

In its findings, the District Court found that Taylors were anxious, suspicious, and distrustful from the fact that their attorney had an initial distrust of Holm, and from the fact that Holm raised the issue of trust when Taylors requested the return of their money. The District Court also found distrust based on numerous telephone calls from Taylors to Holm during the period of time that they were attempting to secure the return of their money. However, most of these telephone calls lasted for no more than one minute, the longest was for five minutes, and there is no record of what was discussed, or whether Holm was even reached during these telephone calls. Furthermore, Stark's distrust of Holm is irrelevant if it was not communicated to Taylors.

Based on our review of the record, we conclude that the inferences relied on by the District Court do not amount to substantial evidence that Taylors had notice of Holm's fraudulent activity, or reason to suspect that the money he returned to them was obtained by fraudulent activity. Therefore, we conclude that the District Court erred when it found that Taylors did not possess a state of mind which qualified them as innocent transferees of Lawrence's property.

## II.

Is a person who receives property in exchange for an antecedent debt an innocent purchaser for value under Montana law?

The District Court concluded that Taylors could not be innocent transferees for value because, at most, they established an antecedent debt which did not constitute "value." On appeal,

17

defendant contends, based on Restatement of the Law of Restitution, that an antecedent debt is sufficient to establish "value," and that that rule should be adopted in Montana. Lawrence contends that our prior decisions regarding bona fide purchasers require the exchange of new consideration in order to establish "value."

Our standard for reviewing legal conclusions of a District Court is to determine whether they are correct. *In re Marriage of Burris* (Mont. 1993), 852 P.2d 616, 619, 50 St. Rep. 525, 526.

Lawrence cites our early decision in *Montana Electric Company v. Northern Valley Mining Company* (1915), 51 Mont. 266, 153 P. 1017, for the proposition that to establish bona fide purchaser status "new" consideration is required. It is true that in *Montana Electric Company*, 153 P. at 1018, we set forth the rule as follows:

> A *bona fide* purchaser is defined to be "one who at the time of his purchase advances a new consideration, surrenders some security, or does some other act which leaves him in a worse position if his purchase should be set aside, and purchases in the honest belief that his vendor had a right to sell, without notice, actual or constructive, of any adverse rights, claims, interest, or equities of others in and to the property sold." [Citation omitted].

However, it is important to observe that in that case the nature of consideration provided was not the issue. The above rule was simply set forth without analysis or further discussion regarding its merits.

Defendant, on the other hand, suggests that we adopt § 173 from Restatement of the Law of Restitution, which defines "value" as follows:

18

(2) Except in the case of a transfer by an express trustee, a transfer of property other than an interest in land in satisfaction of or as security for a pre-existing debt or other obligation is a transfer for value.

In this case, defendant contends that Holm had a prior obligation to repay the money that was invested with him upon 30 days' notice of Taylors' request that he do so, and therefore, when he repaid that amount the antecedent obligation satisfied the requirement that the transfer be for "value."

We conclude that the definition of "value" set forth in Restatement of the Law of Restitution § 173 (1937) is more consistent with the equitable purpose of the "innocent transferee" defense, and therefore, adopt that rule in this and in future cases which involve issues of constructive trusts and innocent transferees.

The question in cases such as this is which of two innocent persons "should suffer a loss which must be borne by one of them." That is the issue which the "bona fide purchaser" defense was established to address. We conclude that a purchaser is no less innocent and that his or her loss would be no less significant if the property they acquired was in exchange for a previous obligation or debt than if the property was acquired in exchange for new consideration. The net effect or damage to the innocent purchaser or transferee is the same. Therefore, under equity, the result must be the same.

19

For these reasons, we conclude that the District Court erred when it held that Taylors had not provided "value" to Holm in exchange for the money that he wired to them.

Based on our conclusion that there is no evidence in this record that Taylors had notice of any wrongful conduct on the part of Holm, and that the money they received from him was transferred for "value," we conclude that the judgment of the District Court must be reversed.

This case is remanded to the District Court for entry of judgment for defendant.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

20