SINGLE MOMS, INC., a non-profit corporation; Derilyn Dorscher, individually and on behalf of her minor children; Christine McCrea, individually

and on behalf of her minor children; Mary Kay McGrath, individually and on behalf of her minor children, Plaintiffs–Appellants,

v.

MONTANA POWER COMPANY, a Montana corporation; Pennsylvania Power & Light, a Pennsylvania corporation; northwestern corporation, a South Dakota corporation; Pancanadian Energy, an Alberta corporation; Montana State House of Representatives, The 55th Legislative Session Members; Montana State Senate, The 55th Legislative Session Members; Encana Energy Resources, Inc., Defendants–Appellees.

No. 02–35361.

United States Court of Appeals, Ninth Circuit.

Submitted June 3, 2003.*

Filed June 10, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. See

Fed. R.App. P. 34(a)(2).

for defendant-appellee Montana Power Company.

Chris D. Tweeten, Montana Attorney General's Office, Helena, MT, for defendant-appellee Montana legislators.

Michael Lesch and Stephen H. Orel, Le-Boeuf, Lamb, Greene & MacRae, New York, NY, and Robert M. Murdo, Jackson, Murdo, Grant & McFarland, Helena, MT, for defendant-appellee PPL Montana.

Kellie M. Gaston, Crowley, Haughey, Hanson, Toole & Dietrich, Billings, MT, for defendant-appellee Encana Energy Resources, Inc.

Before LAY,** FERGUSON, and GOULD, Circuit Judges.

## OPINION

GOULD, Circuit Judge.

The plaintiffs, a group of single Montana mothers, appeal from the district court's dismissal of their 42 U.S.C. § 1983 claims against the defendant Montana Power Company (MPC), an electric and natural gas utility company. The plaintiffs claim that MPC violated their constitutional rights when MPC hired lobbyists to influence the Montana legislature to enact legislation to deregulate the Montana energy markets. Because MPC's lobbying efforts were not "state action" implicating the single mothers' constitutional rights, and because we reject the plaintiffs' other claims, we affirm the district court's dismissal.

Robert C. Kelleher, Sr., Butte, MT, for the plaintiffs-appellants.

G. Steven Brown, Helena, MT, and Dennis R. Lopach, Northwestern Corporation,

** The Honorable Donald P. Lay, Senior United States Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

## I

In the mid–1990s, defendant MPC paid about $70,000 to professional lobbyists in exchange for the lobbyists' efforts to influence the Montana legislature to deregulate Montana's energy markets. MPC's lobbyists spent about $6,000 entertaining Montana legislators, and MPC's "political action committee" contributed about $17,000 to legislators' campaign funds.

In 1997, the Montana legislature enacted the Electric Utility Industry Restructuring and Customer Choice Act, Mont.Code Ann. § 69–8–101 *et seq.*, and the Natural Gas Utility Restructuring and Customer Choice Act, Mont.Code Ann. § 69–3–1401 *et seq.*, which were designed to give Montana customers the freedom to choose their energy suppliers. *See* Mont.Code Ann. § 69–8–102 *et seq.;* Mont.Code Ann. § 69–3–1403. One consequence of energy deregulation, according to the plaintiffs, was an electricity and gas rate increase.

The plaintiffs, who say they are too poor to buy gas and electricity in the newly deregulated Montana utility market, filed suit in federal district court under 42 U.S.C. § 1983 claiming that MPC violated their rights under the United States and Montana Constitutions. Specifically, the plaintiffs claim that MPC violated their federal Fourteenth Amendment substantive due process and equal protection rights and violated their Montana constitutional rights to equal protection and "to pursue life's basic necessities." The plaintiffs also filed suit against eighty-three Montana legislators and two energy companies in addition to MPC. The plaintiffs sought $5 million in money damages for a class of single Montana mothers, $25,000 for each single mother identified in its amended complaint, and an injunction forbidding MPC from disconnecting the single mothers' gas and electrical services if they fail to pay for services in the future.[1] The district court granted the defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). The plaintiffs appeal.

## II

■ The plaintiffs claim that MPC—a privately owned and operated corporation—violated their rights under the United States and Montana Constitutions by hiring lobbyists and attempting to influence the legislature.[2] We affirm the district court's dismissal of these constitutional claims because MPC's lobbying acts are not attributable to the State of Montana or to any other government entity and so cannot violate the plaintiffs' constitutional rights.

■ We begin with the plaintiffs' federal constitutional claims. The United States Constitution protects individual rights only from *government* action, not from *private* action.[3] Only when the *gov-*

---

1. The district court denied the plaintiffs' request for an injunction, and we summarily affirmed the district court's decision in an unpublished disposition. *See Single Moms, Inc. v. Montana Power Co.*, No. 01–35756, 2001 WL 1398480 (9th Cir. Nov.8, 2001).

2. We review de novo the district court's dismissal for failure to state a claim. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir.2003).

3. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)

(observing that "most rights secured by the Constitution are protected only against infringement by governments") (internal quotation marks and citations omitted). *See also United States v. Morrison*, 529 U.S. 598, 621, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) (holding that the Fourteenth Amendment " 'erects no shield against merely private conduct, however discriminatory or wrongful' ") (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948)).

*ernment* is responsible for a plaintiff's complaints are individual constitutional rights implicated. *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001). So MPC cannot violate the plaintiffs' Fourteenth Amendment substantive due process or equal protection rights unless the State of Montana is somehow responsible for MPC's lobbying activities.

The Supreme Court has held that an ostensibly private organization or individual's action may be treated as the government's action "if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Academy,* 531 U.S. at 295, 121 S.Ct. 924 (internal quotation marks omitted). *See also Lee v. Katz,* 276 F.3d 550, 554 (9th Cir.2002).[4] The Supreme Court has identified facts that bear on whether private action may be treated as that of the state. The Court has held, for example, that a challenged action by a private actor may be state action when: (1) the government compelled the action using its "coercive power" or provided "significant encouragement, either overt or covert," for the action, *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); (2) the government and the private actor willfully participated in joint activity, *Lugar,* 457 U.S. at 941, 102 S.Ct. 2744; (3) the government controlled a nominally private actor, *Pennsylvania v. Bd. of Dirs. of City Trusts of Philadelphia,* 353 U.S. 230, 231, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957) (per

curiam); or (4) the government delegated a "public function" to the private actor, *cf., e.g., West v. Atkins,* 487 U.S. 42, 56, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 627–628, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); *Evans v. Newton,* 382 U.S. 296, 299, 301, 86 S.Ct. 486, 15 L.Ed.2d 373, (1966).

▮ MPC's efforts to influence the passage of legislation by lobbying state legislators bore no characteristics that would render the company's actions fairly attributable to the State of Montana. This is so because, accepting the plaintiffs' allegations as true, MPC influenced the State of Montana, rather than the reverse.

First, the State of Montana did not exercise "coercive power" or provide "significant encouragement" to MPC. *Blum,* 457 U.S. at 1004, 102 S.Ct. 2777. Rather, MPC provided encouragement to the State of Montana.

Second, neither the State of Montana nor its agents "willfully participated in joint activity" with MPC, *Lugar,* 457 U.S. at 941, 102 S.Ct. 2744, even if, as the plaintiffs allege, MPC lobbyists drafted and proposed the Montana statute that was enacted by the legislature. The legislators in carrying out their public duties were not "agents" of the State of Montana. When state legislators consider, draft, and vote for a statute even if they do so with a constituent's help—they are legitimately executing the duties of their offices, not acting for the state with private parties in a "joint activity." Moreover, MPC's lobby-

---

4. In determining whether MPC's lobbying efforts constituted "state action" sufficient to implicate the federal Constitution's Fourteenth Amendment, we also necessarily determine whether MPC's action occurred "under color of state law" within the meaning of the Supreme Court's § 1983 jurisprudence. *See*

*Brentwood Academy,* 531 U.S. at 295 n. 2, 121 S.Ct. 924 ("If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action 'under color of state law' for § 1983 purposes.").

ists were acting for MPC's private interests and not for the state.

▇ Third, the State of Montana does not "control" MPC, though it does regulate many particulars of MPC's business. That a private entity is regulated by government does not transform that private entity's conduct into state action. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350–51, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. Nor does the fact that the regulation is extensive and detailed, as in the case of most utilities, do so.") (citation omitted).

Fourth, the State of Montana has not delegated a "public function" to MPC. MPC's petitioning of the government is a quintessential private function. *See E. R.R. Presidents Conf. v. Noerr*, 365 U.S. 127, 137, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).

We hold that MPC's efforts to influence lawmakers through lobbying were private acts not fairly attributable to the State of Montana. *See First Nat'l. Bank of Omaha v. Marquette Nat'l. Bank of Minneapolis*, 636 F.2d 195, 198 (8th Cir.1980) (holding without discussion that a bank's lobbying activities designed to obtain the passage of a Minnesota statute were not "state action").[5] MPC's lobbying activities

thus could not have violated the plaintiffs' federal constitutional rights.

Even if there existed significant government involvement in MPC's actions, we nonetheless would hold that MPC's actions were not fairly attributable to the State of Montana. The Supreme Court has held that there may be "some countervailing reason against attributing activity to the government," even if facts suggest significant government involvement in private action. *Brentwood Acad.*, 531 U.S. at 295–96, 121 S.Ct. 924. Here, MPC's lobbying was an exercise of its lawful First Amendment right to petition the government, and that is a countervailing reason against attributing MPC's activity to the State of Montana.

The Supreme Court has stressed the importance of citizens' exercising their First Amendment right to petition the government:

> In a representative democracy such as this, [the legislative and executive] branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives.

*Noerr*, 365 U.S. at 137, 81 S.Ct. 523. If we deemed citizens' lawful and protected efforts to influence government "state action," then citizens could be held liable whenever their political activities played a

---

5. The Tenth Circuit has held that the New Mexico State Bar's employment of a lobbyist "to influence members of the State Legislature on issues of public policy" constituted "state action." *Arrow v. Dow*, 636 F.2d 287, 289 (10th Cir.1980). *Arrow* is not inconsistent with our holding. In *Arrow*, unlike here, the entity that hired the lobbyist was a state agency. *See id.* (noting that the Supreme Court of New Mexico created the Bar, adopted its governing rules, and required all lawyers to be members). *See also Hass v. Or.*

*State Bar*, 883 F.2d 1453, 1460 (9th Cir.1989) (holding that there is "no doubt that the [Oregon] Bar is a public body, akin to a municipality for the purposes of the state action exemption" from the Sherman Act); *Barnard v. Chamberlain*, 897 F.2d 1059, 1062 (10th Cir.1990) (holding that Utah State Bar's publishing of a newspaper was "state action" since the Utah State Bar is a governmental entity established by state law and created as an administrative agency of the Utah Supreme Court).

role in government action later determined to have been unconstitutional. Such a holding would create a new category of state action (lobbying) and a new battlefield—the nation's courtrooms—in political contests. Such a holding also would have a chilling effect on legitimate political expression in derogation of the First Amendment. It would threaten to deprive government of useful information that private citizens might otherwise provide. This is a significant countervailing reason against attributing MPC's lobbying activity to the government. MPC's lobbying activities were the typical actions of a private individual or corporation that seeks to tell lawmakers what it wants or needs from government; such lobbying activities, whether an aid or a hindrance to good governance, are not "state action" implicating individual constitutional rights.

■ Having rejected the plaintiffs' federal constitutional claims, we turn to the plaintiffs' state constitutional claims. Like the United States Constitution, the Montana Constitution protects individual rights from *government* action, not *private* action. *See, e.g., State v. Long,* 216 Mont. 65, 700 P.2d 153, 157 (1985) (holding, "in accordance with well-established constitutional principles," that the Montana Constitution's privacy right protects against "state action only"); *Gulbrandson v. Carey,* 272 Mont. 494, 901 P.2d 573, 578 (1995) (holding that Montana Constitution's Equal Protection Clause protects against "arbitrary and discriminate *state action*") (emphasis added); *In re: Yellowstone River,* 253 Mont. 167, 832 P.2d 1210, 1214 (1992) (holding that the Montana Constitution protects water rights against "unrea-

sonable *state action*") (emphasis added). So MPC cannot violate the single mothers' Montana constitutional rights to equal protection, Mont. Const. Art. II, § 4, and to "pursu[e] life's basic necessities," Mont. Const. Art. II, § 3, unless the State of Montana is responsible for MPC's lobbying activities.

The parties have not cited, nor have we found, any Montana judicial decision addressing whether or when private action may constitute "state action" for purposes of the Montana Constitution. However, the Montana Supreme Court frequently has looked to the United States Supreme Court's interpretations of the United States Constitution for guidance in interpreting similar concepts in the Montana Constitution, *see, e.g., Gulbrandson,* 901 P.2d at 578 (looking to United States Supreme Court cases for guidance on equal protection); *Montana v. Christensen,* 244 Mont. 312, 797 P.2d 893, 895–97 (1990) (looking to United States Supreme Court cases for guidance on the exclusionary rule), and we conclude the Montana Supreme Court would do so here. Because MPC's lobbying was not "state action" implicating the United States Constitution, we hold that MPC's lobbying also was not "state action" implicating the Montana Constitution. The district court properly dismissed the plaintiffs' Montana constitutional claims.[6]

**III**

The plaintiffs also appeal the district court's dismissal of their claims against eighty-three Montana legislators and two energy companies in addition to MPC. We

---

**6.** To the extent the plaintiffs allege that MPC's disconnecting or threatening to disconnect them from the power grid for nonpayment of their bills violated their state or federal constitutional rights, the plaintiffs' claims are not cognizable because those actions also were not "state action." *See generally Jackson,* 419 U.S. at 353, 95 S.Ct. 449 ("[C]ourts have rejected the contention that the furnishing of utility services is either a state function or municipal duty.").

affirm the district court's dismissal of these claims.

■ First, the plaintiffs claim that the defendant Montana legislators violated the single mothers' constitutional rights when the legislators voted to enact legislation deregulating the Montana energy markets. But because the Montana legislators "have an absolute common-law immunity against civil suit for their legislative acts," *Chappell v. Robbins,* 73 F.3d 918, 920 (9th Cir.1996), the district court properly dismissed the claims against them.

■ Second, the plaintiffs claim that defendants Pennsylvania Power & Light (PPL) and Encana Energy Resources, Inc., were "unjustly enriched" by certain transactions that occurred after the deregulation of Montana's energy markets. Taking as true the plaintiffs' factual allegations, as we must at this stage, the plaintiffs nonetheless failed to allege that either PPL or Encana engaged in misconduct or possesses property that properly belongs to the single mothers. *See Sebena v. State,* 267 Mont. 359, 883 P.2d 1263, 1268 (1994); *Lawrence v. Clepper,* 263 Mont. 45, 865 P.2d 1150, 1156 (1993). The plaintiffs failed to state an unjust enrichment claim under Montana law, and the district court properly dismissed its claims against PPL and Encana. Moreover, to the extent the plaintiffs' claims against PPL and Encana were brought under § 1983, the district court properly dismissed them because the plaintiffs failed to allege that the companies violated the single mothers' federal constitutional or statutory rights and because the companies were not acting "under color of law." 42 U.S.C. § 1983.

**AFFIRMED.**